CLARK *et al. v.* SERVICE AUTO CO.*

(Division B. May 24, 1926. Suggestion of Error Overruled June 21, 1926.)

[108 So. 704. No. 25425.]

1. LANDLORD AND TENANT. *Provision in lease for forfeiture and re-entry for nonpayment of rent is valid and enforceable, though at common law, in absence of such provision, nonpayment of rent does not operate as forfeiture or confer on lessor right of re-entry.*

   Though at common law nonpayment of rent, in absence of provision therefor in lease, does not operate as forfeiture of term or confer on lessor right of re-entry, a provision in lease for forfeiture and reentry for nonpayment of rent is valid and enforceable.

2. LANDLORD AND TENANT. *Lease contract that landlord may re-enter without legal proceedings is binding to extent that landlord, entitled to possession unlawfully withheld, may re-enter without breaking doors or passages of ingress and without personal violence.*

   Where landlord is entitled to possession unlawfully withheld by tenant, lease contract providing that landlord may re-enter without legal proceedings is binding to extent that landlord may re-enter, provided he does so without breaking doors, windows, or other passages of ingress, and neither uses nor threatens personal violence towards tenant or those holding for him.

3. LANDLORD AND TENANT. *Landlord, having taken possession of premises without use of force under lease giving him right to dispossess tenant on nonpayment of rent, held not guilty of trespass, though tenant did not consent to be ousted.*

   Landlord, taking possession of leased premises on nonpayment of rent under lease giving him right to dispossess tenant for failure to pay rent, *held* not guilty of trespass on taking possession without use of physical force, though tenant did not consent to be ousted from leased premises.

4. LANDLORD AND TENANT. *Permitting three rent installments to become in default under yearly lease providing for landlord's right to dispossess in default of any monthly payment held not waiver of tenant's default, where he was not permitted to hold over into another year.*

Under lease for one year, with provision that, on nonpayment of any of monthly rent notes, landlord should have right to dispossess tenant, permitting three rent installments to remain unpaid *held* not to constitute waiver of default, since tenant was not permitted to hold over into another year without payment of accrued rent.

5.   LANDLORD AND TENANT. *Landlord is liable for conversion of personal property belonging to tenant found on leased premises on taking possession because of nonpayment of rent.*

Landlord is liable to tenant for any unlawful conversion of personal property belonging to tenant and found on leased premises on landlord's taking possession of premises because of failure to pay rent.

---

*Corpus Juris-Cyc References:   Landlord and Tenant, 35CJ, p. 1065, n. 75; p. 1069, n. 29, 21; p. 1080, n. 72 New; 36CJ, p. 64, n. 37 New 45; p. 599, n. 26, 27; p. 601, n. 58; p. 603 n. 98; p. 615, n. 68.   Forfeiture as remedy for nonpayment of rent, see 16 R. C. L., p. 1126; 3 R. C. L. Supp., p. 628; 4 R. C. L. Supp., p. 1097; Liability of landlord for damages for forcibly dispossessing tenant after expiration of term, see notes in 11 L. R. A. (N. S.) 468; 42 L. R. A. (N. S.) 394; 16 R. C. L., p. 1177; 4 R. C. L. Supp., p. 1102.

APPEAL from circuit court of Clay county.

HON. J. I. STURDIVANT, Judge.

Action in trespass by the Service Auto Company against L. G. Clark and another.   Judgment for plaintiff and defendants appeal.   Reversed and remanded.

*McIntyre & Roberds,* for appellants.

I.   *The major question is the right of Clark, under the forfeiture clause in the lease contract as to payment of rent, to re-enter the premises because of the failure and refusal of the lessee, appellee here, to pay the rent.* Provisions in leases for a term of years for forfeiture or right to re-enter the property for nonpayment of rent, though not favored by the courts, are universally held to be valid and enforceable at law.   16 R. C. L., par. 647, p. 1126; 35 C. J., par. 232; 35 C. J., p. 1064, par. 234; 35 C. J., p. 1068, par. 239; *Whitcomb* v. *Indian-*

*apolis Tract Co.* (Ind.), 116 N. E. 144; *Blue Ridge Coal Co.* v. *Hurst* (Ky.), 244 S. W. 892; *New Orleans* v. *Rigney,* 24 La. Ann. 235; *Starr* v. *Starr Methodist Protestant Church* (Md.), 76 Atl. 595; *Miller* v. *Havens* (Mich.), 16 N. W. 865; *Patton* v. *Bond,* 50 Iowa, 508; *Gulf Compress* v. *Merchants Cotton Press Co.,* 265 F'ed. 199, *certiorari* denied, 254 U. S. 635, 65 L. Ed. 449; *Hallbrooks* v. *Rosser* (Ark.), 221 S. W. 483; *Sells* v. *Brewer* (Ark.), 187 S. W. 907; *Smith* v. *Caldwell* (Ark.), 95 S. W. 467; *Buckner* v. *Warren,* 41 Ark. 532; *Malone* v. *Wade* (Ark.), 230 S. W. 579; *Allenspach* v. *Wagner* (Col.), 10 Pac. 802; *Reynolds* v. *Fuller,* 64 Ill. A. 134; *Cremer* v. *Anderson* (Kan.), 128 Pac. 208; *Wender Blue Gem Coal Co.* v. *Louisville Property Co.* (Ky.), 125 S. W. 732; *Perret* v. *Dupre,* 19 La. 341; *Fox* v. *McKee,* 31 La. Ann. 67; *Koron* v. *Watson,* 14 La. Ann. 432; *Hennen* v. *Hayden,* 5 La. Ann. 713; *Cooke* v. *Brice,* 20 Md. 397; *Gould* v. *Bugbee* (Mass.), 6 Gray 371; *Lowenthal* v. *Newlon* (Minn.), 164 N. W. 905; *LaSalle Inv. Co.* v. *Wells* (Mo.), 181 S. W. 1136; *Jackson* v. *Vincent* (N. Y.), 4 Wend. 633; *Backus* v. *West* (Ore.), 205 Pac. 533; *Reams* v. *Fye,* 24 Pa. Ct. 671; *Follin* v. *Coogan,* 46 S. C. L. 44; 36 C. J., p. 598, pars. 1757-58; *Princess Amusement Co.* v. *Smith* (Ala.), 56 So. 379; *Wetzel* v. *Meranger,* 85 Ill. A. 457; *Delph* v. *Finnell,* 2 Ky. Op. 91; *Podren* v. *Macquarrie* (Mass.), 123 N. E. 335; *Chetteeville* v. *Grant* (Mass.), 123 N. E. 616; *Cowen* v. *Carpenter* (N. Y.), 128 App. Div. 862; *Kavanaugh* v. *Cohoes Power Corp.,* 187 N. Y. S. 216; *Scott* v. *Wasson,* 2 Ohio Dec. 460; *Henderson* v. *Begs* (Tex.), 207 S. W. 565; *Van Rensselaer* v. *Hays,* 19 N. Y. 68; *Main* v. *Green,* 32 Bar. 454; *New Orleans* v. *Camp* (La.), 29 So. 340; *Jackson* v. *Kipp,* 3 Wend. 230; *Conner* v. *Jones,* 28 Cal. 59; Taylor on Landlord & Tenant secs. 290-91; *Pendhill* v. *Union Mining Co.* (Mich.), 31 N. W. 100; *Winston* v. *Franklin Acad.,* 28 Miss. 121.

A reading of the above authorities will demonstrate the universal holding that such provisions are legal and valid. As bearing upon the question we point out:

(a)    That such provision is legal and valid though it be a harsh one: *Patton* v. *Bond,* 50 Iowa, 508; *Blue Ridge Coal Co.* v. *Hurst* (Ky.), 244 S. W. 892;

(b)    That it applies to negative as well as affirmative covenants: *Wheeler* v. *Earle* (Mass.), 51 Am. Dec. 41; *West Shore R. R. Co.* v. *Wenner* (N. J.), 103 A. S. R. 801, affirmed, 60 Atl. 1134;

(c)    Even in cases of leases in fee, reserving a rent charge, such a provision has been held from an early date not to be in any way repugnant to the estate granted or public policy and, therefore, valid: 16 R. C. L., p. 1126, par. 647; *Van Rensselaer* v. *Hays* (N. Y.), 75 Am. Dec. 278.

The right is an individual right and requires no process of court.    See *New Orleans* v. *Camp* (La.), 29 So. 340; *Fox* v. *McKee,* 31 La. Ann. 67; *Conner* v. *Jones,* 28 Cal. 59; Taylor on Landlord & Tenant, secs. 290-91; *Hickson* v. *Barton* (Fla.), 80 So. 745; *Winston* v. *Trustees of Franklin Academy,* 28 Miss. 120.

Re-entry for nonpayment of rent "is on the same foundation as other cases where the term is terminated as by efflux of time and the general statutes directed against forcible entries do not, according to general view, impose a civil liability upon a landlord who, after his right to possession has accrued, forcibly ejects the tenant." 16 R. C. L., p. 1143, par. 663. Nonpayment of rent, when the lease so provides, is on the same ground as termination of the lease by time. 16 R. C. L., par. 800.

Not only in such case has the landlord the right to re-enter, but he is entitled to make the re-entry by force, using no more force for that purpose than is reasonably necessary, without incurring any civil liability to the lessee. 16 R. C. L., p. 1143, par. 663; 2 Taylor on Landlord & Tenant (8 Ed.), secs. 531-2; 36 C. J., p. 600, par. 1761; *Howe* v. *Frith* (Colo.), 15 Ann. Cas. 1069; 17 L. R. A. (N. S.) 672; *Tribble* v. *Frame* (Ky.), 23 Am. Dec. 439; *Stearns* v. *Sampson* (Me.), 8 Am. Rep. 442; *Low* v.

*Elwell* (Mass.), 23 Am. Rep. 272; *Smith* v. *Detroit Loan Ass'n* (Mich.), 39 L. R. A. 410; *Fuhr* v. *Dean* (Mo.), 60 Am. Dec. 484; *Hyatt* v. *Wood* (N. Y.), 4 Am. Dec. 258; *Allen* v. *Keily* (R. I.), 16 L. R. A. 798; *Rush* v. *Aiken Mfg. Co.* (S. C.), 79 A. S. R. 836; *Mugford* v. *Richardson,* 83 Am. Dec. 617; *Eames* v. *Prentice,* 8 Cush. 337; *Sterling* v. *Warden* (N. H.), 12 Am. Rep. 80; *Livingston* v. *Tanner,* 14 N. Y. 64; *Jackson* v. *Morse* (N. Y.), 8 Am. Dec. 306; *Hyatt* v. *Wood* (N. Y.), 4 Am. Dec. 258; *Oberdeer* v. *Lewis* (Pa.), 37 Am. Dec. 440; *Simmons* v. *Thompson,* 12 Ohio Dec. 268; *Esty* v. *Baker,* (Me.), 79 Am. Dec. 616; *Wilde* v. *Cantillion,* 1 John's Cas. 123; *Cox* v. *Eckstrom,* 142 Ill. App. 426; *Moring* v. *Ables,* 62 Miss. 263.

With the previous knowledge of the bad financial condition of the Service Auto Company, with the information from the bank that it was in bad financial condition and none of the notes had been paid, with the information from Dr. Hughes that the doors would soon be closed unless a compromise settlement could be made, Clark, in response to a telegram that his apartment house at West Point had been destroyed by fire, returned to West Point on November 11.

Clark saw everybody connected in any way with the business, including the prospective purchaser. He had asked about the payment of the rent. No one had paid the rent or offered to pay the rent. With this condition confronting him, with the knowledge and information as to the financial condition of the lessee, with McCrary, the man who had had sole charge, having deserted the business, with three months' rent unpaid, with no tender or offer on the part of anyone to pay it, and with the lease containing the provision that if the rent was not paid, he could take possession of his building, why did Clark not have the right to do that which the parties, themselves, had mutually contracted should be done; that is, take possession of the building?

II. *Where the landlord has lawfully re-entered he may remove the goods of the tenant from the premises, pro-*

*vided in so doing he exercises ordinary and reasonable care and refrains from unnecessary force and violence or unnecessary damage or injury to the property.* See 36 C. J., p. 601, par. 1763; 16 R. C. L., p. 1177, par. 700; *Princess Amusement Co.* v. *Smith* (Ala.), 56 So. 979; *Backus* v. *West* (Ore.), 205 Pac. 533; *Stearnes* v. *Sampson* (Me.), 8 Am. Dec. 442; *Rollins* v. *Moores,* 25 Me. 192.; *Clark* v. *Kellihur,* 107 Mass. 406.; *Hilbourn* v. *Fogg,* 99 Mass. 11.; *Whitney* v. *Sweatt* (N. H.), 53 Am. Dec. 228; *Smith* v. *Hawkes,* 2 Ohio Dec. 733; *Freeman* v. *Wilson* (R. I.), 17 Atl. 921; *Ish* v. *Marsh* (Nebr.), 96 N. W. 58; *Oberdeer* v. *Lewis* (Pa.), 37 Am. Dec. 440; *Bergland* v. *Frawley* (Wisc.), 40 N. W. 372; *Mugford* v. *Richardson* (Mass.), 83 Am. Dec. 617.; 38 Cyc. 1063; *Babcock* v. *Western Corp.* (Mass.), 43 Am. Dec. 411; *Granger* v. *Postal Tel. Co.,* 106 A. S. R. 750; 26 R. C. L. 938; 16 L. R. A. 798; *Opperman* v. *Littlejohn* (Miss.), 54 So. 77.

The plaintiff asked damages for trespass and conversion. Under the circumstances of this case, applying thereto the legal principles, there can be no damages for wrongful conversion. Nothing belonging to the Service Auto Company was even used by Cox, except the showcases and these because Cox had no place to put them and McCrary was notified to remove them and failed and refused to do so.

We submit on the question of damages for conversion, there can be no recovery in this case.

*Leftwich & Tubb* and *J. E. Caradine,* for appellee.

I. *Willful trespass and conversion jointly made by the appellants.* That the appellants, defendants below, committed a willful trespass on the leased property of appellee, unlawfully evicted appellee and unlawfully converted its property to appellants' own use, we submit cannot be successfully denied.

II. *The pretended right of Clark because of failure of lessee to pay rent to re-enter.* Counsel in their brief

make the pretended right of Clark to re-enter for failure to pay the rent the pivot in the brief and cite the lease contract as containing a covenant to re-enter forcibly or peaceably on the failure to pay rent.

At the threshold we take sharp issue with counsel and deny outright that the failure to pay rent, even if not waived as it was here, as the cause of re-entry totally fails to justify the conduct of the appellants as shown by this record. The language of the covenant cannot be construed so as to mean that the lessor for failure to pay the rent was given the right of re-entry. The language used is that the failure to pay the notes "gives the party of the first part the right to dispossess the party of the second part and take possession of said buildings without further notice."

In England and in those states where covenants to re-enter for failure to pay rent are held legal and enforcible, the language is very narrowly and strictly construed and the right to re-enter either preaceably or forcibly, one or both, must be very plain and unambiguous. This subject is dealt with at length in a monographic note in *Howe* v. *Frith*, 127 A. S. R. 79. The enforcement of the rule so far as it is enforced in the American commonwealths is well stated on page 86 of the same note. See also 36 C. J. 603, sec. 1767.

Here, as we have shown, the covenant in the contract does not claim the right of re-entry; the only grant to the landlord is to re-enter by legal action through the courts. It is also plain that if it were conceded that the right to re-enter were granted in the lease contract for the failure to pay rent that right is waived in the instant case for the landlord had allowed three rent installments to pass unnoticed and had thus given the tenant notice that he was not particular about the prompt payment of the rent and had waived the right of forfeiture for failure to pay rent. The right of re-entry by the lessor is lost by non-action. 36 C. J., sec. 1768 and authorities;

Note to *Howe* v. *Frith,* 127 A. S. R. 79; 16 R. C. L., par. 1131.

III.  *Right of re-entry under the Mississippi statutes and decisions.*  Counsel cite great numbers of cases of other states but fail to cite a single Mississippi decision except the case of *Winston* v. *Franklin Academy,* 28 Miss. 121; and *Moring* v. *Ables,* 62 Miss. 263; neither of which applies or controls in this and the latter of which is positively against appellants' contention.

Our legislature has enacted statutes by which a tenant in default of rent under certain circumstances can be summarily ejected and by our Unlawful Entry and Detainer Statute a local court can be speedily set up and the tenant ejected.  These statutes, as the leading cases everywhere hold, have taken away the right of forcible or peaceable entry or the right of the landlord to re-enter the premises.  These statutes are not only wise but they are enacted to preserve the peace and good order of society.

Our chapter on Landlord and Tenant has not only given a landlord a lien for rent but has given him the right of attachment for rent due in arrears and to become due: Sections 2330 and 2336, Hemingway's Code. In case of a tenant holding over and continuing in possession after the term without permission of the landlord and after default in the payment of rent pursuant to the agreement under which the premises are held: Section 2383, Hemingway's Code, *et seq.*  Even this drastic remedy could not have been used here, as was held in *Wilson* v. *Wood,* 84 Miss. 728, because there is no pretext that there were not abundant goods out of which the landlord could have made his rent by distress and ejectment or eviction and is never allowed where there are abundant goods on the premises, as here, to enable the landlord to get satisfaction of the rent.

Again, if the landlord does not care to proceed by the slow process of ejectment under section 220, Heming-

143 Miss.—39.

way's Code, as he may, he can have organized an Unlawful Entry and Detainer court under section 700, Hemingway's Code, and on five days' notice eject the tenant from the premises. Our court has properly held that the entry upon the land of a person or a tenant in possession, however quietly made, is forcible within the meaning of section 5039, Code of 1906, section 3311, Hemingway's Code; *Parker* v. *Eason,* 68 Miss. 290; *Seals* v. *Williams,* 80 Miss. 234.

Trespassing upon the property of a plaintiff by a defendant and dispossessing him or converting his property by the defendant against his will has long been looked upon in the courts of Mississippi with disfavor and the courts have vested full and exemplary redress where the matter is brought to the court's attention, especially in cases between landlord and tenant: *Robinson* v. *Goings,* 63 Miss. 500; *Wilson* v. *Kukendall,* 112 Miss. 486; *Agnew* v. *Jones,* 74 Miss. 347; *Usher* v. *Moss,* 50 Miss. 208; *Wilson* v. *Wood,* 84 Miss. 728; *Lay* v. *Great Southern Lbr. Co.,* 118 Miss. 636; *Stollenwerch* v. *Eure,* 119 Miss. 854; *Bancroft* v. *Seashore Camp Ground School,* 120 Miss. 446. On the same point see, 16 R. C. L. 1128, sec. 649; 88 A. S. R. 809.

There was an absolute and wilfull trespass by the landlord and his supposed new tenant Cox in going on the premises in the absence of the officers and directors of the corporation, taking possession of the cash from the money drawer or cash register and using the chattels without consulting the president of the company or McCrary, the secretary-treasurer, and without heeding his protests when he was seen. We submit that *Lay* v. *Great Southern Lbr. Co.,* 118 Miss. 636, is directly in point.

In dealing with the question of trespass and in effectuating the purpose of the laws and statutes of Mississippi, see especially *Agnew* v. *Jones,* 74 Miss. 347 at 352.

This court must not confuse the instant case with that line of cases which deal with re-entry after the termina-

tion of the lease when the term is definite and fixed and all like cases, but it must not be overlooked that the term had not expired, that only two months and thirteen days of it had expired; that no demand for payment of rent ever had been made at the proper time, or any time, and that the payment of rent on the monthly due rate had not been exacted; that there were on the premises abundant good out of which the rent in arrears could have been made by distress; that the re-entry was near the middle of a monthly mental period and not on a due date; that our statutes giving sundry remedies for possession and relief when there was nonpayment of rent. See sections 2383-84 *et seq.*, Hemingway's Code, especially section 2392.

We contend that these statutes afford the *exclusive remedy* in this and all other like cases as all our decisions show and as a long course of unbroken precedents show, that no matter what is the policy of England and some other jurisdictions, this is the policy of Mississippi.

*McIntyre & Roberds,* in reply, for appellants.

Learned counsel say that because Clark did not in person demand the rent earlier than November 12, he thereby waived the forfeiture clause in the contract for nonpayment of rent.

We submit the following is an answer to that contention:

(1) That the mere failure to demand the rent, where demand is necessary, is not a waiver of the forfeiture clause;

(2) In this case the appellee had executed notes for the rent and these notes were payable at the Bank of West Point, as they had been in previous years. The notes, as in previous years, had been left at the bank for collection. Clark had left West Point for Ohio about September 10 and did not return until November

11.   The notes were at the place of payment.   It was the duty of the maker to have the money at that place to pay the notes when they were due.   It was not there. It never had, on the date the notes were due at the bank, the money to pay them.   It cannot complain and take advantage of its own default and own breach of duty and own violation of contract.

Argued orally by *W. G. Roberds* and *A. J. McIntyre,* for appellants, and *G. J. Leftwich* and *J. E. Caradine,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellee, Service Auto Company, a corporation under the laws of this state, brought this action in trespass in the circuit court of Clay county against appellants, L. G. Clark and H. E. Cox, to recover damages claimed by appellee, a tenant of appellant Clark, on account of the alleged unlawful ousting of appellee by appellants from the leased premises and the conversion to their own use of certain personal property situated on such premises. There was a trial resulting in a verdict and judgment in favor of appellee from which appellants prosecute this appeal.

Appellant Clark owned a lot in West Point on which was situated a building.   In August, 1924, appellant Clark leased this lot and building to appellee for one year beginning September 1, 1924, and ending September 1, 1925.   The lease contract was in writing as follows, leaving off the formal parts and signatures:

"This contract made by and between L. G. Clark of West Point, Miss., party of the first part, and the Service Auto Company of West Point, Miss., party of the second part, witnesseth:

"First.   That the party of the first part has rented to the party of the second part the same buildings that the party of the second part now occupy from September

1, 1924, to September 1, 1925. Said party of the second part has executed to the party of the first part, twelve promissory notes of forty-five dollars each, one payable 1st day of each month, beginning September 1, 1924, and one each month thereafter, until all are paid.

"Second. The failure on the part of the party of the second part to pay either or any of these notes as they fall due makes them all become due and payable and gives the party of the first part the right to dispossess the party of the second part and take possession of said buildings, without further notice."

It will be observed from the contract that appellee agreed to pay a rental of forty-five dollars per month in advance on the 1st of each month for the period of the term. The monthly rent installments were evidenced by twelve promissory notes payable to the order of the appellant Clark at the Bank of West Point, where they were all placed for collection. H. C. Terrell was president of appellee company, and W. F. McCrary was secretary and manager, and, so far as the record shows, they were the only stockholders of the company.

Appellee operated on the leased premises what is known as an automobile garage, where it sold oil and gasoline and automobile parts and carried on an automobile service department in connection therewith. Appellee knew that the rent notes had been placed in the Bank of West Point for collection. The three notes due the 1st of September, the 1st of October, and the 1st of November, 1924, were not paid, although the bank had requested payment of appellee of each of them. These three notes all remained unpaid on the 13th of November, 1924. On that date appellant Clark went into the building on the leased premises, and, without breaking or threats and without physical force or personal violence of any kind, and in the presence of appellee's employees in charge as well as of McCrary, its secretary and manager, declared the lease forfeited for nonpayment of the past-due rent installments, and thereupon

took charge of the premises and put appellant Cox, his new tenant, in possession.

Appellee's evidence tended to show that it did not consent to be ousted from the leased premises, but on the contrary protested and offered, if given an opportunity, to pay the overdue rent. The evidence showed without conflict, however, that appellee yielded possession to appellant Clark and his new tenant, appellant Cox, without the exercise on their part of either physical violence or the threat thereof. After so taking possession of the leased premises, appellants retained and used for a while the showcases therein and other personal property belonging to appellee. Later appellants notified appellee to remove from the leased premises all of its property therein except what had been levied on by distress for the rent against appellee on behalf of appellant Clark, which was in the custody of the officer making the levy. As a result of the re-entry and taking possession of the premises in the manner stated, appellee recovered damages of appellants in the sum of three thousand dollars. The elements of damages which appellee's evidence tended to establish were the alleged unlawful trespass in re-entering the leased premises, the conversion by appellants of certain personal property therein belonging to appellee, and the loss of profits on appellee's business, which business was destroyed by the retaking of the premises.

The principal question presented and argued is whether appellants were guilty of a trespass in taking possession of the leased premises in the manner stated. The appellants' position is that they were justified by the last paragraph of the lease contract in so taking possession of the leased premises. Besides the general issue, appellants interposed a special plea to appellee's declaration, in which they set up the right of appellant Clark to re-enter the leased premises under the forfeiture clause of the lease contract because of the nonpayment of the rent installments, and the plea averred further that the re-

entry was made "peaceably, without force or objection."
Appellee's demurrer to this special plea was sustained.

Appellants requested a directed verdict in their favor,
which was refused by the court. Appellee requested and
was granted a directed verdict in its favor on the question
of liability. The granting and refusal of these instruc-
tions is the main ground of error argued and relied on
by the appellants. The question alone was submitted to
the jury of the amount of damages suffered by appellee.
The turning point in the question of liability for the al-
leged trespass depends on the meaning of the last para-
graph of the lease contract, which provides, in substance,
that a failure to pay any of the rent notes as they fell
due shall give the landlord the right to dispossess the
tenant and take possession of the leased premises with-
out further notice.

At common law, nonpayment of rent does not operate
in the absence of a provision therefor in the lease as a
forfeiture of the term or confer upon the lessor the right
of re-entry. But, where there is a provision in the lease
for forfeiture and re-entry for nonpayment of rent, such
a provision is valid and enforceable. There seems to be
no division of authority on this proposition. 16 R. C. L.,
p. 1126, section 647, and cases collated in the notes. Un-
der such a stipulation in the lease contract, can the land-
lord re-enter without a legal proceeding? There are
three lines of authority treating this subject.

The weight of authority is to the effect that, where the
lessor is entitled to the possession of the leased premises
by reason of a clause in the lease contract giving him the
right of entry for a breach thereof, he is entitled to make
re-entry by force, using no more force for that purpose
than is reasonably necessary, and that he may do so with-
out incurring any civil liability to the lessee. Such cases
rest on the same foundation as cases where the term has
expired by efflux of time; and statutes directed against
forcible entries do not impose civil liability upon the land-
lord who, after his right to possession has accrued, for-

cibly ejects the tenant. The only liability, if any, incurred by the landlord in so entering, is criminal for assault or assault and battery, or other breach of the peace. There is another line of authorities holding that the right of the landlord to take forcible possession of the leased premises is not conducive to public order, and that the force used for that purpose must stop short of personal violence. There is still another line holding that the landlord is without right to make forcible entry, and is liable to the tenant in damages therefor. These latter decisions appear to be based on the ground of public policy. Some of the cases are from states having statutes making a forcible entry upon land tortious, and some are based upon the fact that summary proceedings have been provided by statute through which the landlord may obtain speedy possession. 36 C. J., p. 600, section 1761; 16 R. C. L., p. 1143, section 663; and the authorities collated in the notes in each reference.

It was held in *Moring* v. *Ables,* 62 Miss. 263, 52 Am. Rep. 186, that a vendee of land in possession having no legal title thereto and having failed to comply with his contract of purchase could not recover possession of such land from one who, being the purchaser of the legal title thereof and having the right to make a peaceable entry thereon, took forcible possession of the land; that the only remedy in such case was resort to an action of unlawful entry and detainer. That case on its facts is not controlling here, but in the opinion the court discussed the principles governing the present case. The court said, in substance, that there was great diversity among the authorities upon the question of the rights and remedies of an occupant of land who had been forcibly evicted by the owner having the undoubted right to make a peaceable entry; that the courts of this country occupied radically different positions on the question, and there was no little conflict among the English courts; that after the entry into power of the Norman conquerors a tenant under such circumstances had no civil remedy, and it was

even doubtful whether the owner of land re-entering by force was subject to indictment unless guilty of a breach of the peace in addition to forcible entry; that the conflict of authority arose after the adoption of the statute (5 Rich. 2, chapter 8) prohibiting the entry upon lands " 'with strong hand nor with multitude of people, but only in a peaceable and easy manner,' on pain of punishment," etc.; that, after the passage of that statute, some courts held that, since the act of entering by force was made unlawful, no right could arise from it, that a lawful possession could not be acquired by an unlawful act, and therefore the possession so acquired could not be interposed by the owner as a defense in any character of action; that another view declared by the majority of the English courts was that, though the tenant may recover damages against the landlord for any trespass against his person or property committed in making the forcible entry or in evicting the tenant after such entry, yet he could not recover damages done to the premises, since to an action of trespass, *quare clausum* a plea of *liberum tenementum* could be successfully interposed by the owner, nor could the tenant recover possession of the premises in any other manner than provided by the statute against forcible entry and unlawful detainer; that in this country, as stated in 1 Washburn on Real Property, 538, the weight of authority was to the effect that, if the owner of land, unlawfully held by another, enter and expel the occupant, but makes use of no more force than is necessary to accomplish this, he would not be liable to an action of trespass *quare clausum,* nor for injury to the occupant's goods, nor for an assault and battery, although he might be liable to criminal prosecution for assault and battery. Judge COOPER who wrote the opinion for the court in that case concluded the discussion by stating that the courts of Vermont and Illinois stood alone in holding that a tenant who continues unlawfully in possession can, as against the owner who has made a forcible entry, recover damages in an action of trespass

*quare clausum,* or possession of the premises by eject-
ment, and that the decided weight of authority by which
the opposite view was sustained was especially applica-
ble in this state, since here the action of ejectment was
no longer a mere possessory action but one in which the
title is tried, a judgment in which would conclude, not
only the question of possession, but also the right of
title. *Winston* v. *Franklin Academy,* 28 Miss. 118, 61
Am. Dec. 540, tends to support the same view.

Our landlord and tenant and unlawful entry and de-
tainer statutes give the landlord, in the state of cases
therein provided for, effectual and summary remedies for
regaining possession of leased premises unlawfully with-
held. We think those statutes declare the public policy
of the state with reference to that subject. One of the
purposes of these statutes was to furnish the landlord a
peaceful as well as an effectual remedy. It was to prevent
infractions of the criminal laws in regaining possession
of lands unlawfully withheld. We hold contrary to the
greater number of cases that a landlord cannot, by break-
ing or threats of personal violence or the exercise of
such violence, regain possession of the leased premises,
although entitled thereto under the law. But we go no
further. Where the landlord is entitled to possession
which is unlawfully withheld by his tenant, and the lease
contract provides, as it does in effect in the present case,
that the landlord may re-enter without legal proceedings,
such a contract is binding to the extent that the landlord
may re-enter, provided he does so without breaking doors,
windows, or other passages of ingress, and neither uses
nor threatens personal violence towards the tenant or
those holding possession for him. Putting it differently,
if the tenant yields possession without such breaking
on the part of the landlord and without either the use of
or the threatening or personal violence by the latter
against the tenant or those holding for him, the land-
lord's possession so taken is legal. We see no evil re-
sults which could flow from such principle. It is only

carrying out to that extent the contract of lease made between the parties. And we see no public policy that would be violated by such a principle. We hold, therefore, that under the undisputed facts in this case the landlord got possession of the leased premises, and in doing so was not guilty of a trespass.

It is argued by appellee that appellant Clark condoned or waived appellee's default in paying the rent installments by permitting three installments to remain unpaid and appellee to hold over into another month. We do not think the principle invoked has any application to the facts of this case. This was not a letting by the month but for a specified period, one year, the rent to be paid in advance in monthly installments. There might be some force in appellee's position if the year had expired and the appellant Clark had permitted appellee to hold over into another year without payment of the accrued rent.

It follows from these views that the court erred in sustaining the appellee's demurrer to appellants' special plea, and also erred in directing a verdict for appellee on the question of liability for an unlawful trespass.

It is true, however, that, notwithstanding appellants were lawfully in possession of the leased premises, they would be liable to appellee for any unlawful conversion to their use of the personal property belonging to appellee found by them on the leased premises. That question alone should have been left to the jury for determination.

*Reversed and remanded.*