HUTCHINS v. ROUNDS et al.

(In Banc.   January 26, 1948.)

[33 So. (2d) 622.   No. 36658.]

Brown & Gwin, of Natchez, for appellant.

**Engle, Laub, Adams & Forman,** of Natchez, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Appellant Dinah Hutchins, and appellee, Julia Bernard, together with five other persons, owned as tenants

in common the Glen Aubin Plantation, consisting of approximately two hundred acres of land, located in Adams County, Mississippi. Hutchins and Bernard each owned a one-twelfth and the other five parties each owned a one-sixth undivided interest in said lands. Hutchins occupied alone as her home a three-room house located on a part of said lands. Bernard, with her husband and three children, over the protest of Hutchins, forceably moved into the house under the circumstances hereinafter set out. Hutchins instituted an unlawful entry and detainer proceeding to oust them from the premises. Three days later Bernard filed the bill in this cause, praying for a decree adjudicating the right of Bernard and family to the exclusive occupancy and use of one room and the common use of the kitchen in said house, and for an injunction, temporary and permanent, restraining Hutchins from interfering with such occupancy and use. The chancellor granted a temporary injunction, and, on motion to dissolve, made that injunction permanent. From that action, Hutchins appeals here.

She contends, first, that there had been a legal oral partition of the lands between the cotenants, followed by possession, so as to vest in each exclusive title to definite portions of the entire tract, and that as a result she was vested with such title to the house in controversy, and that, therefore, Bernard had no title to or legal interest therein; and, second, that the bill in equity would not lie because the pending unlawful entry and detainer procceeding afforded Bernard a complete, adequate remedy at law; and, third, the bill could not be maintained because complainants therein did not come into equity with clean hands.

On the first proposition, the proof fails entirely to show an oral, or any other, agreement, to partite the lands. It does disclose an agreement, or common understanding between the tenants in common, for certain of them to occupy particular houses located on the lands, and cultivate and use undefined land approximate to

such houses, with the exclusive right to the income and proceeds from such use and cultivation. But there is no evidence of any agreement that any tenant would be vested with the exclusive title to the parcel so occupied and used. One of the tenants in common did not even reside on the land. Furthermore, no tract is defined or described, and it would be impossible, under the proof herein, to ascertain the boundaries of any parcel, or separate one from the other. But, if the proof did show a partition of the entire tract into smaller parcels, and that Hutchins and Bernard had been allotted the house here in controversy, there is no intimation they had agreed upon any division thereof between themselves. Therefore, Bernard and Hutchins together owned a one-sixth, and each of the other tenants in common owned a one-sixth, undivided interest in the entire tract.

We do not pass upon the second contention because we think the third is well taken, and the bill should have been dismissed for that reason. We assume the unlawful entry and detainer proceedings is yet pending and untried in the circuit court. Nor need we pass upon the validity of the judgment Hutchins obtained by default against Bernard in the unlawful entry and detainer court. However, we will remark that the injunction of the chancellor, whether rightfully or wrongfully issued, should have been obeyed after legal notice thereof to Hutchins and actual notice to the justice of the peace.

As to the third proposition, these are the pertinent facts: The common source of title of all tenants was Goliath Rounds, who died intestate in 1931. His only heirs were seven children. One child had her portion set aside to her, leaving the other six as co-owners of the remainder of the land, a part of which remainder is the property in controversy. One child, Dinah Rounds, the owner of a one-sixth interest, married one Woods. They had one child, Julia Woods, who is appellee Julia Bernard. Dinah and Woods were divorced. Dinah then married Jesse Hutchins. Dinah died intestate in 1943 and

her one-sixth undivided interest descended in equal parts to Jesse Hutchins, her husband, and Julia Woods, her only child. Hutchins married Dinah Perry, who is the appellant Dinah Hutchins. Jesse Hutchins died intestate in August, 1946, leaving his wife Dinah Perry Hutchins as his only heir. In this manner, Dinah Hutchins and Julia Woods (who had married Bernard) together became the owners of the one-sixth interest of Dinah Rounds. As stated above, all of the six children of Goliath Rounds, except Alice Washington, remained upon the plantation, each, by common consent, occupying a certain house thereon and cultivating certain patches, or fields, approximate to each house. Dinah Rounds so occupied the house in question until her death in 1943, first with her husband Woods, and then with her husband Jesse Hutchins. Thereafter, Hutchins occupied it alone until he married Dinah Perry, and thence he and Dinah Perry Hutchins occupied it as their home until the death of Jesse Hutchins in 1946, and thereafter Dinah Hutchins so occupied it alone to the time of the controversy herein. It appears also that Julia Woods lived in this house with her Mother Dinah Rounds until her marriage to Kirk Bernard in 1940. Thereupon, she and her husband moved to Natchez, and thence to New Orleans, residing in these cities a total of about seven years. They returned to Adams County about the first of 1947. Therefore, when Dinah Hutchins began to reside in the house as her home, Julia Woods Bernard had been gone therefrom for a number of years. When Julia returned, her family consisted of herself, her husband and three children, ages 5, 3 and one and a half years respectively. She demanded a number of times that Dinah Hutchins permit her and her family to move into the house and have the exclusive use of one of the rooms, and the common use of the kitchen therein. Dinah refused the demands. Thereupon, Julia and her husband, and two of her uncles, appeared with Julia's household goods at the Hutchins home. Dinah was not there, and the house was securely

locked. They proceeded to break into the house by removing the "slats" from, and raising, a window, and by removing a "hasp" from a locked door. They then removed all of Dinah's furniture and household effects from one room into the other, and asserted common occupancy and use of the kitchen. Dinah, after returning to her home, caused the arrest of Kirk Bernard, the husband, and Charles Rounds, one of the appellees herein, and a participant in the breaking. The outcome of that is not shown. It also appears that, in the absence of Julia, Dinah nailed up the door leading from Julia's room to the kitchen. She then, on February 11, 1947, instituted the unlawful entry and detainer proceeding. On February 14, 1947, the present bill for injunction was filed. It is thus seen that Bernard, by force and violence, broke into the home of Hutchins, and installed herself and family in the part she desired to occupy, and removed from that part the furniture and effects of Hutchins, all over Hutchins' protest, and at a time when she was then, and for a number of years had been, in the peaceable possession thereof by consent of all the tenants in common. Bernard then invoked the aid of a court of equity to perpetuate her in the possession thus unlawfully obtained.

One of the great maxims of equity is that one who invokes the aid of equity must come with clean hands. Here, Bernard was guilty of a crime and was in no position to seek the aid of equity to secure her in the fruits of her acts. It is not enough to say she had the same legal interest in the property as Hutchins. In Clark v. Service Auto Co., 143 Miss. 602, 108 So. 704, 49 A. L. R. 511, the tenant had agreed as a part of the lease contract for the landlord to retake possession on default in payment of the rent. The tenant defaulted. This Court said that, while the landlord had the right to retake possession, he did not have the right to break doors or passages or resort to violence or threat of violence in so doing. In that case, the tenant had no legal right whatever to possession, whereas in the case at bar the occupant not

only had the same legal right in the property as the intruder but was in such possession by consent of all interested parties. In 14 A. J. 139, Section 69, it is said: "one tenant in common who occupies a particular part of the property by agreement of his cotenants may maintain trespass against any of them for the same acts which would constitute trespass on the part of a stranger, even though the length of his occupation is insufficient to mature an absolute legal title in severalty." To approve the acts here committed would sanction the act of any tenant in common in breaking into the home of another tenant, and installing himself therein, although the occupying tenant was in possession by consent of all of the co-owners. Here, there are seven tenants. Who, and how many, can so force themselves into the homes of the others? Bernard had, and has, a proper legal remedy to enforce her rights. The method adopted does not commend itself to a court of equity.

But, appellees say the point was waived by a stipulation between the attorneys on the hearing of the motion to dissolve the temporary injunction, which stipulation is in these words:

"It is stipulated between the attorneys that this hearing will be a final hearing on the issues of the injunction in this matter, and that the rights of the parties in the property in question will hereby be adjudicated." The bill was filed February 14, 1947, and the regular court term was the first Monday in March thereafter. The case was not triable on its merits at the March term. This stipulation was nothing more than an agreement that the chancellor should adjudicate at that time all the questions involved, which could not have been done in the absence of such agreement.

Reversed and bill dismissed.