BARNES, J.,
for the Court.
¶ 1. Shirley and Vince Ladner entered into a lease with J.D. Pigg which granted Pigg the use of a certain parcel of property in Leake County, Mississippi. The Lad-ners filed an action for declaratory judgment to have the lease terminated due to their having received Pigg’s 2001 annual lease payment seven days after the date specified in the contract. The Chancery Court of Leake County dismissed the complaint with prejudice. Finding no manifest error with the trial court’s decision, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Appellant, Shirley Ladner, and Ap-pellee, J.D. Pigg, are sister and brother. As part of the resolution of their mother’s estate, the siblings agreed that Ladner and her husband, Vince, would receive a 3.2 acre tract of land with a house and a ten-acre tract which adjoined certain property owned by Pigg. The Ladners agreed to lease the ten-acre tract to Pigg for use in the operation of his cattle farm. The parties entered into a. written ten year lease which set forth an “annual rent of $100.00 due and payable August 1, 2000.”[1] The first payment was made in cash on the day the lease was executed. On August 1, 2001, the date the second payment was due, Mrs. Pigg apparently mailed the check to “1442 Chaplin Circle” rather than to “1443 Champlin Circle.” When the postmaster returned the check, Mrs. Pigg placed it in another envelope and forwarded it to the Ladners. The Ladners received the payment on August 8, 2001, and returned it to Pigg.
¶ 3. Dissatisfied with the lease,[2] the Lad-ners seized upon the late payment as an opportunity to declare the lease in default and terminated. They refused to accept any further lease payments from Pigg. On March 24, 2003, the Ladners filed their complaint for declaratory judgment requesting the Chancery Court of Leake County to declare the lease terminated.
¶ 4. Following a hearing on the merits, Chancellor William J. Lutz dismissed the Ladners’ complaint with prejudice. The chancellor determined that payment on the first of the month was not made of the essence to the lease, and that the Piggs made a mistake on the address. He concluded that although the payment was seven days late, it was “not that big a deal.” Further, the court found that while the Ladners had suffered no prejudice because of the delay, Pigg’s having to re-fence his adjoining property to keep his cattle off the ten-acre tract if the lease was terminated would “certainly cost him a lot of money.” The Ladners filed a timely notice of appeal to this Court. Pigg filed no brief in response to the Ladners’ request for appellate review.
STANDARD OF REVIEW
¶ 5. This Court employs a limited standard of review when reviewing a chancellor’s decision. Shirley v. Christian *102 Episcopal Methodist Church, 748 So.2d 672, 674(¶ 9) (Miss.1999). Therefore, this Court will not interfere with the chancellor’s findings unless he was “manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Bowers Window and Door Co. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989).
ANALYSIS
¶ 6. First, as no brief was filed by J.D. Pigg in this case, we must address the question of what to do when the appellee does not file a brief. We have two options in this situation. W.T. Raleigh & Co. v. Armstrong, 165 Miss. 380, 380, 140 So. 527, 527-28 (1932). The first option, to deem the appellee’s failure to file a brief as a confession of error, should be done when the record is complicated or of large volume and “the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error.” May v. May, 297 So.2d 912, 913 (Miss.1974). The second option, to disregard the appellee’s error and affirm (W. T. Raleigh & Co., 165 Miss, at 380, 140 So. at 528), should be taken when the record can be conveniently examined and such examination reveals a “sound and unmistakable basis or ground upon which the judgment may be safely affirmed.” May, 297 So.2d at 913 (citing W.T. Raleigh & Co., 165 Miss. at 382, 140 So. at 528). In the instant case, an examination of the record reveals that the basis for the chancellor’s decision is sound, and the Ladners have not made out an apparent case of error. Thus, we affirm and discuss the merits of the case below.
¶ 7. The chancellor, in rendering his decision, explained:
I don’t see anything in this lease that says that payment, exactly on the first of the month, was the essence of the lease ... just seven days is not that big a deal. And in equity, I cannot come to the conclusion that that would automatically cancel this lease absent something else, some intent that I haven’t seen. It looks to me like best — from the information I have got, it looks like the Piggs made a mistake on the address.
We find that the chancellor’s decision correctly applied two relevant equitable principles regarding the termination of a contract. First of all, “[u]nless a contract expressly so states, or unless there is otherwise shown to be a clear indication of intent, time is not ordinarily considered to be of the essence in the performance of a contract.” Lee v. Schneider, 822 So.2d 311, 314 (¶ 10) (Miss.Ct.App.2002) (citing Gault v. Branton, 222 Miss. 111, 125, 75 So.2d 439, 445 (1954)). Secondly, because terminating a contract is viewed as an extreme remedy and should be granted sparingly, termination of the contract is not proper absent a material breach. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc., 525 So.2d 746, 756 (Miss.1987). The chancellor’s decision recognized that the court’s ability to terminate a contract rests on whether there was a material breach. A breach is material where there is “a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose.” McCoy v. Gibson, 863 So.2d 978, 980(¶ 5) (Miss.Ct.App.2003) (quoting Gulf South Capital Corp. v. Brown, 183 So.2d 802, 805 (Miss.1966)). The plaintiff bears the burden of proving material breach by a preponderance of the evidence. McCoy, 863 So.2d at 980. After considering the evidence presented, the chancellor was justified in concluding that time was not of the essence to the lease and Pigg’s mere “mistake on the address” *103 causing one payment to be seven days late did not constitute a material breach.
¶ 8. Having determined that the chancellor’s decision was sound, we must now consider whether the Ladners raised a valid assignment of error. The Ladners only contention is that the trial court erred in not finding that Pigg had breached the lease and in fading to declare the lease terminated. The Ladners base their argument on the uncontested fact that Pigg made a payment seven days late along with a provision in the lease that gives the lessor the right to re-enter the premises upon non-payment.
¶ 9. The Ladners present several cases in support of their argument. In Clark v. Service Auto Co., 143 Miss. 602, 108 So. 704 (1926), the tenant agreed as a part of the lease contract for the landlord to retake possession on default in payment of the rent. The tenant defaulted, and the court found the landlord to be in rightful possession. The court stated that “where there is a provision in the lease for forfeiture and re-entry for nonpayment of rent, such a provision is valid and enforceable. There seems to be no division of authority on this proposition.” Clark, 143 Miss., at 604, 108 So. at 706. Further, in Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d 624 (Miss.1965), the court provided a summary of the proposition presented in Clark, reiterated by 51 C.J.S. Landlord and Tenant § 104b, 683 (1947), which states, “In the absence of a statute to the contrary, a tenancy cannot be terminated for a breach of covenant by the lessee unless there is an express and distinct provision in the lease for a forfeiture or right of reentry on the occurrence of the breach.... ” While we agree with these cases and the result of their application, that the Ladners’ lease provision for forfeiture and re-entry for nonpayment of rent is valid and enforceable in certain situations, the court cannot terminate a contract absent a material breach. See UHS-Qualicare, Inc., 525 So.2d at 756. None of the cases cited by the Ladners discuss the effect of a right of re-entry of forbearance where time is not of the essence to the contract. Further, even if a payment made seven days late constituted a material breach, a court of equity has the ability to intervene where mistake on behalf of the lessee is present. See Moore v. Kriebel, 742 So.2d 139, 146(¶29) (Miss.Ct.App. 1999). Although the Ladners argue that Pigg mailed the payment late and the wrong address was just a diversion, the chancellor found the payment was late simply due to a mistaken address. Upon the finding of mistake, the chancellor had the authority to reheve Pigg from a forfeiture. Id.
¶ 10. Having found that time was not of the essence to the lease and, there was no material breach by payment seven days late, we find no manifest error in the chancery court’s decision not to terminate the lease. Accordingly, we affirm.
¶11. THE JUDGMENT OF THE CHANCERY COURT OF LEAKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.

. The lease specified that "if the rent above stated shall be due and unpaid ... then it shall be lawful for the Lessor to re-enter the said premises and the same to have, repossess and enjoy.”

. The source of the "bad blood” between the parties is not totally apparent from the record. Suffice it to say that the Ladners believe Pigg “slipped” certain lease terms "in on” them. The Ladners admit that they did not read the lease before signing it.