## Nason *v.* Morrissey, et al.

Nov. 2, 1953

No. 38911        41 Adv. S. 26        67 So. 2d 506

*Thomas Fite Paine,* Aberdeen, for appellant.

*Wm. J. Vollor,* Vicksburg; *McFarland & Holmes,* Aberdeen, for appellees.

604

HOLMES, J.

The appellant sued the appellees in the Chancery Court of Monroe County seeking the specific performance of an alleged agreement granting him the option to purchase land, and, in the alternative, to recover of the appellee damages for the claimed breach of the alleged agreement. The appellees demurred to the original bill and their demurrer was sustained. The appellant declined to plead further and his original bill was dismissed and from this action of the court, he appeals.

We state only such material allegations of the bill as are necessary to a decision of the case on the demurrer, and they are as follows: That on January 13, 1950, the appellee, Mike T. Morrissey, executed to the appellant a written instrument whereby he agreed to sell to the appellant certain land which he owned in Monroe County known as the McKee place for the sum of $15,000, at the option of the appellant to be exercised within ten days beginning January 13, 1950; that as a consideration for said option, the said Morrissey required that appellant pay in escrow the sum of $2,000 to bind the option, which appellant did; that before the option expired, the said Morrissey, in a telephone conversation with appellant, orally agreed to renew the option for a period of six months and required appellant to increase the escrow deposit from $2,000 to $5,000, which appellant did on

February 18, 1950, and that such escrow deposit since said date has remained in the Monroe Banking and Trust Company of Aberdeen, Mississippi; that during said period of six months and subsequent thereto, the full amount of $15,000 was on hand available to be paid the said Morrissey and the appellant offered repeatedly during the time the option was in force to pay to the said Morrissey the sum of $15,000 upon the execution and delivery to him of a deed conveying said property; that the reason the said Morrissey did not execute the deed was that the Internal Revenue Department of the United States had made a claim against him for $267,278.89 for delinquent income taxes, and that in negotiations for a settlement of said claim he had rendered a financial statement to the Government in which he had valued the land in question at $8,000, and that he did not want to execute the deed for a consideration of $15,000 and thereby disclose to the Government that he had undervalued the property; that on March 2, 1950, the Government filed a lien against said land for the claimed delinquent income taxes; that while the option as renewed was in force and effect, the appellant had repeated personal and telephone conversations with the said Morrissey in which the said Morrissey agreed to convey the property as soon as the Government's claim was settled and the lien removed; that relying upon the oral agreement for the renewel of the option, the appellant contracted to sell the land to J. L. Johnson for $20,800, and that when the said Morrissey was advised of this, he told appellant to let Johnson go into possession of the land and occupy it free of rent until the tax liability was settled and the lien removed and the deed executed; that the tax claim was settled and the lien removed on July 9, 1950, and that on July 10, 1950, the said Morrissey conveyed the land to his mother, the other appellee herein, for a recited consideration of $25,000, and advised appellant that he would

have the land conveyed to him if he would pay $25,000 therefor; that the conveyance of the land by the said Morrissey to his mother was for the fraudulent purpose of defeating the option and that appellee, Mrs. Josephine R. Morrissey, accepted the conveyance to her with full knowledge of the option and of the fraud attempted to be perpetrated upon appellant.

The bill prayed cancellation of the conveyance to appellee, Mrs. Josephine R. Morrissey, the specific performance of the alleged option agreement as renewed, and, in the alternative, the recovery of damages for the alleged breach of the option agreement in the sum of $5,800, being the difference between the purchase price as recited in the option and the amount for which appellant claimed he had agreed to sell the land to Johnson.

It is conceded that the appellant did not exercise the original written option within the period of ten days therein provided. He relies upon the oral agreement to extend the option for a period of six months, which is alleged to have been made during the original period of ten days. The contract under review is one for the sale of land. It is one, therefore, which, under the statute of frauds, is required to be in writing. Sec. 264, Miss. Code of 1942. Hence the question is presented as to whether or not a contract required by the statute of frauds to be in writing can be validly changed or modified as to any material condition therein by subsequent oral agreement so as to make the original written contract as modified an enforceable obligation. It is our conclusion that this question must be answered in the negative, and such conclusion renders unnecessary any discussion of other questions raised on this appeal, such as the presence or absence of a consideration for the original or renewal agreement or the sufficiency of tender.

It should be emphasized in the outset that we are not dealing with a contract not required to be in writing by statute. It is generally recognized that the rule that a

written contract cannot be changed or modified by parol evidence of what was said and done by the parties at the time of the making of the contract does not preclude the subsequent parol modification of the written contract, provided the contract is not one which under the statute is required to be in writing. 49 Am. Jur., Sec. 301, page 609. Neither are we dealing here with a parol agreement to waive or modify a particular condition in a written contract where the parol agreement has been fully executed or fully performed. Such was the case of Lee v. Hawks, 68 Miss. 669, 9 So. 828, reaffirmed in the case of McDonnell Construction Company v. Delta and Pine Land Company, 163 Miss. 646, 141 So. 757. These cases are relied upon by the appellant, but are not applicable to the question here presented. We are not dealing either with a subsequent parol agreement to modify a written contract which is asserted by way of defense to an action for a breach of contract. Such are the cases of Perry v. McLain, 66 Miss. 145, 5 So. 518, Higgins, et al. v. Haberstraw, 76 Miss. 627, 25 So. 168, and Albert Mackie and Co. v. S. S. Dale & Sons, 122 Miss. 430, 84 So. 453. These cases are, therefore, not applicable. We are dealing here with a suit in which the appellant is seeking to enforce a parol agreement to modify a written contract which is required by our statute of frauds to be in writing. This presents an entirely different question and one on which the authorities are not agreed. Most of the authorities, however, and the implications of our own decisions, approve the general doctrine that a contract required by the statute of frauds to be in writing cannot be validly changed or modified by subsequent oral agreement so as to render the original written contract as so modified an enforceable obligation.

In 49 Am. Jur., Sec. 301, pp. 609-610, we find the following: "The rule that a written contract cannot be contradicted, changed, or modified by parol evidence of what was said and done by the parties to it at the time of the

making of the contract does not preclude a subsequent parol modification of a written contract. It is a well-settled principle of contract law that parties to a contract may before any breach of its provision change, modify, vary, or qualify its terms and thus make a new one, provided the contract is not one which under the statute of frauds is required to be in writing. A different question arises when an attempt is made orally to modify a written contract embraced within that statute; while not all the authorities are in accord, the broad general doctrine as announced by most authorities is that a contract required by the statute of frauds to be in writing cannot be validly changed or modified as to any material condition therein by subsequent oral agreement so as to make the original written agreement as modified by the oral one an enforceable obligation. To state the rule differently, where an original agreement comes within provisions of the statute of frauds requiring certain agreements to be in writing, the statute of frauds renders invalid and ineffectual a subsequent oral agreement changing the terms of the written contract.''

In 49 Am. Jur., page 622, is stated the following: ''Under the rule stated, a writing which is a mere option cannot be modified by parol so as to extend the time within which it may be accepted, and thus keep it alive beyond the time fixed in the writing itself.''

In 37 C. J. S., Sec. 232, pages 731 and 732, the general rule is stated as follows: ''Varying views have been expressed on the question of whether the statute of frauds prohibits oral modification of a written contract, and the authorities have been said to be in hopeless conflict. The general rule is that parties to a written agreement coming within the provisions of the statute may not, by mere oral agreement, alter one or more of the terms thereof, and thus make a new contract, resting partly in writing and partly in parol, at least if the modification is of a material term of the contract, and, as hereinafter indi-

cated, has not been executed. The contract can be modified only in the manner in which the contract could be legally made enforceable in the first instance.''

An exhaustive and clear discussion of the doctrine adhered to by the weight of authority is set forth in the case of Athe v. Bartholomew, 69 Wis. 43, 5 Am. St. Rep. 103, and numerous authorities in support of the doctrine are to be found in the annotations to 17 A. L. R. 52, 29 A. L. R. 1098, 80 A. L. R. 547, 118 A. L. R. 1516.

Counsel have referred us to no decision of this Court expressly deciding the question here presented, and our own research has revealed none, but we think that the clear implications of our own decisions favor the adoption of the doctrine hereinbefore set forth as being approved by most of the authorities.

In Higgins, et al. v. Haberstraw, supra, wherein a parol agreement was permitted to be used defensively, the Court said: ''This is not an effort to specifically enforce the parol agreement. If it were, it would, of course, be obnoxious to the statute of frauds.''

In Albert Mackie and Co. v. S. S. Dale and Sons, supra, the Court said: ''The general rule that a contract required to be in writing cannot be altered or modified except by agreement in writing may be conceded.''

In McDonnell Construction Co. v. Delta and Pine Land Company, supra, the Court said: ''It is not controverted that, even though parties have made a written contract, they may thereafter enter into a parol contract in addition to or in waiver of the original contract, and such an oral contract *not in violation of law* may be enforced by the parties.'' (Emphasis ours.)

■■ We think the better doctrine is, and we therefore hold, that a contract required by the statute of frauds to be in writing cannot be validly changed or modified as to any material condition therein by subsequent parol agreement so as to render the original written contract as modified an enforceable obligation. To hold otherwise would,

in our opinion, do violence to the purposes of the statute of frauds and make difficult of attainment its salutary efficacy.

In view of these conclusions, we are of the opinion that the action of the chancellor in sustaining the demurrer, and in dismissing the original bill upon the refusal of the appellant to plead further, was correct, and that the decree of the court below should be, and it is, affirmed.

Affirmed.

*McGehee, C. J.*, and *Lee, Arrington* and *Ethridge, JJ.*, concur.