100 So.2d 445 (1958)
J. Stewart MATHEWS and Viola I. Mathews, Appellants,
v.
George H. KINGSLEY, Rosita Brizel, Grace J. Ross and Business Organizations, Inc., Appellees.
No. 45.
District Court of Appeal of Florida. Second District.
January 22, 1958.
Rehearing Denied March 3, 1958.
*446 J. Leo Chapman, Paty, Downey & Daves, B.F. Paty, West Palm Beach, for appellants.
Neil E. MacMillan, Delray Beach, and Burns, Middleton, Rogers & Farrell, C. Robert Burns, West Palm Beach, for appellees.
ALLEN, Judge.
This is an appeal from the final decree based on a summary judgment, dated June 19, 1957, entered in an action by J. Stewart Mathews, hereinafter called plaintiff, against George H. Kingsley, hereinafter called defendant, to have an option agreement declared void and cancelled of record as a cloud on plaintiff's title to certain lands; and in which defendant Kingsley counterclaimed against plaintiff and plaintiff's wife, hereinafter called cross-defendant, to require them to specifically perform said option agreement. Both the plaintiff and the defendant moved for summary final decrees. The court granted the defendant's motion by ordering the plaintiff and the cross-defendant, to specifically perform the original option agreement and dismissing the plaintiff's amended complaint. The plaintiff and cross-defendant appeal.
The lower court, in its final decree, stated:
"There is no genuine issue as to any material fact herein, such finding being confirmed by admissions to that effect by counsel for both parties before the bar of this court, and by briefs filed with this court."
Since the lower court treated the affidavits by the plaintiff and the defendant as creating no issue of fact, and since no assignments of error have been made by either party raising the question of the proper exercise of summary judgment, this court will not raise such question, ex mero motu.
An option contract is different from a contract to purchase and gives the optionee no equitable interest in the land until he exercises his option to purchase. Wolfe v. Daugherty, 103 Fla. 432, 137 So. 717. In order properly to exercise the option to purchase under an option contract, thus imposing a duty on the vendor to convey the land in accordance with the terms and conditions provided therein, the vendee must strictly comply with the applicable provisions of the contract. Orlando Realty Board Bldg. Corp. v. Hilpert, 1927, 93 Fla. 954, 113 So. 100. It is necessary that the optionee accept the terms of the option unqualifiedly, and it is generally held, not only in law, but also in equity, that the time named in the option contract is to be regarded as of the essence of the option, whether expressly stated or not, and if not exercised within the time limit, the rights *447 of the optionee expire. See 55 Am.Jur., Vendor and Purchaser, Sections 39 and 40, pages 508, 509 and 510.
The optionor, of course, may waive the time for the performance of the option or he may, by his own conduct, be estopped from denying that the optionee complied with the terms of the option within the time set forth in the option contract. South Inv. Corp. v. Norton, Fla. 1952, 57 So.2d 1.
At this point, we are inclined to refer to the rule that the presumption of correctness which is always indulged to support the chancellor's ruling is not so strong where the witnesses, as here, did not personally appear before him. Harmon v. Harmon, Fla. 1949, 40 So.2d 209. With this rule in mind, we shall consider the affidavits upon which the chancellor based his decree and from which we glean the following facts, deemed pertinent to the decision in this case.
In February, 1955, defendant mailed to the plaintiff duplicate original copies of the option agreement which is shown as an exhibit to the amended complaint. Accompanying the option agreement was the defendant's check for $10, which was the consideration recited by the option agreement. The plaintiff and cross-defendant executed both copies of the agreement on February 17, 1955, and returned one copy to the defendant.
An examination of the option agreement shows that it involved four separate options, option No. 1 being as follows:
"The South 75 acres of the above described tract of land owned by Sellers.
"To be exercised on or before January 31, 1956, at and for the price of $500.00 per acre, making a total purchase price therefor in the sum of $37,500.00 payable by Buyer to Sellers at the time of closing."
Option No. 2.
"The South 75 acres of the North 225 acres of the above described tract of land owned by Sellers.
"To be exercised on or before July 31, 1956, at and for the price of $600.00 per acre, making a total purchase price therefor in the sum of $45,000.00 payable by Buyer to Sellers at the time of closing."
Then there follows two other options of similar nature but with increased price per acre of the property involved.
Subsequently, in October or early November of 1955, the defendant and his son visited the plaintiff in Cincinnati, where the defendant told plaintiff there had been an unexpected delay in securing approval by the County Commissioners of his plans for a subdivision of the land described in the option agreement. Defendant requested an extension of time for the exercise of option No. 1, and suggested that a modified or substitute agreement be executed by the parties. Defendant was advised by the plaintiff that a certain mortgage payment was due in December, and was requested to advance the amount due on the mortgage in view of the fact that defendant was going to take up the option in January. Defendant agreed to make the requested advance, but a short time later suggested that he be given a deed to a part of the land covered by option No. 1 equal in value to the amount of money advanced. As a result of this request, plaintiff and cross-defendant executed a deed to the defendant conveying an 18 acre tract at a price of $500 per acre, which was the stipulated price per acre of land in option No. 1. This deed was executed on December 30, 1955, and delivered to the defendant. He in turn paid $6,000 to the plaintiff and conveyed to plaintiff a lot for which defendant was credited $3,000, making a total of $9,000, the amount due for the 18 acres.
The son of the defendant came to Cincinnati on January 23, 1956 and submitted *448 a formal agreement to take the place of the original option agreement of February 17, 1955. The plaintiff, after consultation with his son, a lawyer in Cincinnati, found the agreement to be unsatisfactory and the son of the defendant was advised of this fact; the plaintiff's son stated he would revise the agreement submitted by the defendant's son and draft one which the plaintiff would be willing to substitute for the original option agreement. The defendant's son expressed concern over whether the new agreement could be re-drafted in time for execution by both parties by January 31, 1956, the deadline for exercise of the option to buy under the old contract; but the revision was completed immediately, executed by the plaintiff and his wife, and mailed to the son of the defendant on January 25, 1956. The plaintiff alleged that he did not hear from George H. Kingsley, the defendant, concerning the proposed substitute agreement until some time in March, 1956, when he suggested further changes in it, all of which suggested changes were unsatisfactory to and were not accepted by the plaintiff. The plaintiff then alleges that the proposed substitute agreement having been in the defendant's hands for approximately two months without its being executed by him, and no agreement having been reached as to a contract which might be substituted for the option agreement of February 17, 1955, a registered letter was sent on March 20, 1956, notifying the defendant that he was terminating all proposals or suggestions for the purchase by the defendant of the land described in the option agreement, since the option therein had expired January 31, 1956.
From the defendant's affidavit it appeared that the substitute agreement or option contained a provision that the defendant would pay a bonus of $150,000 to plaintiff and cross-defendant if an extension were made of the time for compliance with the option agreement. The defendant further alleges that the parties reached an oral agreement on this basis, and that necessary papers were to be drawn to effectuate the oral agreement. The defendant also alleges that he paid the taxes on the optioned land in the sum of $348.40.
Examination of the option agreement shows that as part of the consideration for the option, optionee-defendant was required to pay the taxes on the optioned land.
The defendant's affidavit further shows that there was disagreement between the parties as to how the $150,000 payment for the extension should be paid. Apparently plaintiff, on the advice of his son, wanted it made a part of the purchase price in order to secure a long term capital gain. Another dispute developed as to whether or not the notes that were to be given for this sum would have the land only for security, without any personal obligation on the part of defendant.
Apparently the last act, as shown by the defendant's affidavit, prior to the January 31st deadline of the option, was the following:
"Such revised agreement was prepared and sent to affiant's son by the lawyer son of Mathews by letter dated January 25, 1956, and the agreement was thereupon forwarded by affiant's son to affiant in Delray Beach, Florida, and such transmittal to affiant was described in letter dated February 2, 1956, from affiant's son to the aforesaid lawyer son of Mathews.
"Upon receipt of the said revised agreement by affiant in Delray Beach, he submitted the same to his Delray Beach lawyer for analysis, and the lawyer in due course advised the affiant that the revised agreement did not express the terms of agreement reached at the conference of January 21, 1956, in Cincinnati, as modified by the subsequent telephone call above referred to, in that the $150,000.00 payment was made a direct liability by affiant and with recourse, instead of as described in the aforesaid telephone conversation. Early in March 1956 affiant advised Mathews that there were certain *449 desired changes in the agreement as submitted and that he was writing him shortly with regard thereto.
"About March 27, Mathews and his wife called upon affiant at the latter's house in Delray. A discussion of the terms about the $150,000.00 item ensued, and affiant made an additional concession concerning personal liability on the note. Mathews agreed to this and, either on the same or next day, affiant and Mathews (sic) met in affiant's attorney's office at Delray and put such modification in writing, which was agreed to by all parties except that Mathews wanted his son to check the same, and took a tissue copy with him from the attorney's office so that he could send it to his son in Cincinnati."
Subsequently, as above stated, the plaintiff notified the defendant that plaintiff was cancelling all further negotiations with reference to the purchase of the property, and that defendant's option to buy had expired on the 31st of January, 1956.
Nowhere in the affidavits of the parties is there shown an acceptance, on the part of the optionee, of the option contract prior to January 31st, the expiration date. The negotiations between the parties show conclusively that the defendant-optionee was attempting to supersede the original option by a new option extending the time, and for which he was to pay the optionor-plaintiff an additional sum of $150,000. Neither the plaintiff nor the defendant contend that there was a valid option extension agreement entered into between the parties, although the defendant does conclude that the parties reached an agreement, but that this was not put in writing. The defendant, in his counter-claim, did not sue for a specific performance of the proposed second option agreement or modification of the original agreement, but for a specific performance of the original, which under its terms required defendant to exercise option No. 1 on or before January 31, 1956.
There are some indications on the part of the defendant that the payment for which he received a deed from the plaintiff and cross-defendant was a payment on the option contract. We disagree with this contention on the part of the defendant, as it is clear to us that this money was paid as consideration for a direct purchase of 18 acres that were a part of the optioned property, and that the effect of this transaction was to delete the said 18 acres from the total amount involved in the option.
The original option contract contained the following:
"The buyer shall give sixty days written notice of his intention to exercise each option given herein, on or before the expiration date as specified, and shall at that time make a deposit of 10% of the purchase price of the option exercised, as, an earnest money deposit, which shall be credited to the total purchase price at time of closing. In the event the Buyer fails to exercise any option herein granted by the expiration date hereof, then all other options subsequent to the one not exercised shall terminate and expire therewith (but Sellers shall not be liable to refund any money or considerations passing to them hereunder)."
There was no contention on the part of the defendant-optionee that he gave the written notice of his intention to exercise the option, nor that he made a deposit of 10% of the purchase price of the option exercised. As a matter of fact, the only money paid by the plaintiff, insofar as the option was concerned, was $10 and the amount paid for taxes in the sum of $348.40, which was required under the option contract.
Likewise we hold that the facts in this case fail clearly and satisfactorily to establish grounds requiring application of the doctrine of estoppel against plaintiff and cross-defendant, which, particularly as regards interests in land, should be applied with great caution and only in support of clear equity or to prevent fraud. South Inv. Corp. v. Norton, supra.
*450 Therefore, since defendant admittedly failed to exercise his option to buy as required by the contract, and, as we hold, the facts fail to show proper grounds for applying the doctrine of estoppel against plaintiff and cross-defendant, we must reverse the chancellor's decree with directions to enter a decree declaring the original option agreement void and cancelling such agreement of record as a cloud on plaintiff's title.
Reversed with directions.
KANNER, C.J., and SMITH, CULVER, A.J., concur.