McCOLLUM AVIATION, INC., Plaintiff,

v.

CIM ASSOCIATES, INC., a Florida Corporation, Gary L. Self, Philip Carlton, Jr., Wilco Aviation, an Arizona Corporation, Carroll Williams and Roy A. Fulbright, Defendants.

No. 77-3263-Civ.-JLK.

United States District Court, S. D. Florida.

Jan. 19, 1978.

Richard A. Gescheidt, Boca Raton, Fla., for plaintiff.

Percy S. Itkin, Ft. Lauderdale, Fla., Boyce F. Ezell, III, Robert L. Floyd, S. Daniel Ponce, C. Reed Guthridge, Miami, Fla., for defendants.

## ORDER DISMISSING CASE FOR FAILURE TO STATE A CAUSE OF ACTION

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motion of defendant Gary L. Self to dismiss for lack of jurisdiction and/or for failure to state a cause of action. The court, having considered the record and being fully advised in the premises, finds and concludes that the motion to dismiss should be granted due to plaintiff's failure to state a cause of action.

Defendant challenges the sufficiency of the complaint upon two grounds. First, defendant asserts that this court does not have jurisdiction over this matter on the basis of F.S. § 607.354, a door closing statute. This contention as to jurisdiction served as the foundation for this court's prior order dismissing the case on October 5, 1977. *See, McCollum Aviation, Inc. v.* *CIM Associates, Inc.*, 438 F.Supp. 245 (S.D. Fla.1977). Second, defendant contends that the complaint does not state a cause of action.

### I. The Jurisdictional Question:

█ Under the order of October 5, 1977, referred to above, plaintiff was instructed that as a foreign corporation not authorized to do business in Florida, it would have to allege that its business in Florida was exclusively interstate in character and that its claim arose under the laws of the Federal Constitution or the law of interstate traffic in order to establish this court's jurisdiction herein. Defendant contends that plaintiff's complaint fails to comply with that directive. This court cannot agree.

Plaintiff has amended its complaint in a significant way. A crucial phrase has been added to paragraph ten of its former complaint—a phrase which indicates, by implication, that plaintiff's business in Florida was exclusively interstate in character. That phrase reads as follows:

> Plaintiff's *sole contact* within the state of Florida for this and all other transactions, is limited to the facts asserted in this complaint. (emphasis added)

It appears to this court—and defendant does not contend otherwise—that the allegations contained in the complaint are exclusively interstate in character. Since plaintiff asserts that its total contact with Florida is described by those allegations, it would appear that plaintiff has complied with the first requirement of the October 5 order. As to the second requirement—that is, the laws under which the claim arises— this too appears to be satisfied on the basis of the allegations supplied in the complaint. While plaintiff does not expressly indicate that its cause of action arises under the laws of interstate traffic, it would be unduly technical for this court to overlook the fact that this is the posture in which this case arises.

Thus, this court concludes that plaintiff has satisfied the jurisdictional requirement stated in Florida Statute § 607.354.

## II. *The Substance of the Complaint:*

Plaintiff asserts that on April 1, 1977, defendant CIM Associates, through its agent, Gary L. Self, made it a written offer via telegram for the sale of the airplane in issue. On April 5, 1977, a sight draft was issued by defendants payable to the order of defendant with plaintiff listed as the drawee. On or about April 8, plaintiff's bank received that sight draft, accompanied by a partially executed bill of sale. The offer was to expire, by its own terms, on April 11, 1977.

On the date of expiration, plaintiff allegedly spoke with defendant over the telephone and received an oral commitment to extend the expiration date of the option until "Mr. Self obtained from Mr. Carlton a release of the lien on the subject aircraft." On April 18, plaintiff instructed his bank to pay the sight draft, thereby signifying his acceptance. In the interim, defendant sold the plane to another party.

Plaintiff clearly admits that it did not accept the option contract within the written time limit. Its only argument in this regard is that this initial expiration date was superseded by another set orally on April 11. The court finds this proposition legally unacceptable.

Plaintiff's argument may be better understood as one requiring answers to two separate questions. First, was there a requirement that the contract in this transaction be in writing? Second, if the first be answered in the affirmative, will parol evidence of a subsequent modification of a term essential in the written contract be admissible? If such parol evidence is not admissible, the only applicable time limit for acceptance of the option would be that which was stated in writing in the option itself—April 11, 1977. In such a situation, plaintiff would not have stated a viable cause of action for it has already admitted that it has not complied with that limitation.

■ It should be noted, preliminarily, that the resolution of these issues is governed by the Uniform Commercial Code, as adopted by the Florida legislature. The Code is applicable to the sale of goods. F.S. § 672.2–102. The sale of an aircraft, as is involved herein, clearly would be encompassed within the meaning of the term "good" as defined in F.S. § 672.2–105.

### A. *Statute of Frauds:*

The first issue centers on the applicability of the statute of frauds to the transaction involved in the case *sub judice.*

The statute of frauds relating to the sale of goods may be found in Florida Statute § 672.2–201. That provision states, *inter alia,* that the sale of a good whose price exceeds $500 is governed by the statute of frauds. Thus, such a sale would necessitate a written agreement signed by the party to be charged. In essence, if plaintiff is to satisfy the requirement of the statute of frauds, it must tender evidence of a written testimonial of the transaction, signed by the party to be charged—that is, the seller in this instance. Such evidence could be supplied by the option contract received via telegram from defendant CIM Associates through its agent, Mr. Self. That offer stated, *inter alia,* that

This confirms your option to purchase Bell Wilco Helicopter. . . . This offer shall expire at midnight April 11th.
Gary L. Self attorney at law.

The dilemma confronting plaintiff is that the option contract—the very document which serves to satisfy the statute of frauds—serves as plaintiff's undoing because one of its essential terms is the date on which it expires. Unless plaintiff is permitted to introduce evidence of an oral modification of this term, plaintiff would not state a viable cause of action by its own admission.

### B. *Parol Evidence:*

Plaintiff acknowledges that the parol evidence rule represents an obstacle to the introduction of evidence of the phone call in question. However, plaintiff asserts that at the time that the oral modification occurred, the written offer-option contract received April 11 was still an offer and there-

fore, the rules relating to the modification of a written contract would not be applicable.

It is clear to the court that this argument is at the crux of this suit. This is an issue which has not received a great amount of attention in the past. However, of those courts which have considered the problem, the overwhelming number of them have held "that an oral extension of time given to the holder of an option to buy . . . [is] not enforceable." A. Corbin, 1A *Corbin on Contracts, Statute of Frauds:* § 306. In support of this proposition, Corbin offers several cases garnered from the state judiciaries across this nation.

· This court finds support for its conclusion in that treatise and in three additional cases which collectively span a seventy year period.

The first, *Athe v. Bartholomew,* 69 Wis. 43, 33 N.W. 110 (Wis.1887), involved the alleged breach of an agreement to sell land. A series of written communications were involved, the last of which stated that the offeror had to be informed of the offeree's intentions "by 2:30 to-day." *Athe,* 33 N.W. at 111. The court noted, in passing, that there was evidence suggesting that the time limit on acceptance had been extended by telephone conversation on the day of expiration—a circumstance strikingly similar to the one presently before this court. However, the *Athe* court was unwilling to find that a valid contract had been created, even though it decided this issue under the assumption that plaintiff would be able to prove that such a phone conversation did occur. Simply stated, the court determined that the time limit in the initial *written* option contract was an insuperable obstacle. It stated that

> [w]here the law requires a contract to be in writing in order to bind the parties, and the writing signed and produced in evidence shows that the contract signed by the party, who is to be bound by it, is to be completed by an acceptance of the other party within a limited time, it is incompetent to show by parol evidence that the time for its completion, by such

acceptance, was extended to some other date not mentioned in the contract signed by the party to be bound. The acceptance of the party after the time fixed in the written contract, which is to bind the party signing it, does not show that the contract in writing was the contract between the parties, but an entirely different contract, and so the contract actually made by an acceptance, after the time fixed in the writing, is a contract not in writing, and so void under the statute.

*Athe,* 33 N.W. at 113. The disposition reached by the *Athe* court, along with its cogent reasoning, charts the direction in which this court must travel in the case *sub judice.*

That the direction charted by *Athe* has not been superseded by more recent case law is a proposition supported by *Nason v. Morrisey,* 218 Miss. 601, 67 So.2d 506 (1953). Here too, an agreement for the purchase of land was at issue. On January 13, 1950, the vendor executed a written instrument (i. e. an option contract) offering land for sale with the requirement that the option be exercised within ten days. The plaintiff-vendee asserted that while he had not accepted the option within the stated time frame, he had entered into an oral agreement by telephone to extend the limitation. The *Nason* court did not accept this contention.

It was clear to the *Nason* court that the contract at issue had to be in writing due to the strictures of the statute of frauds. Therefore, the court isolated the critical issue as follows: whether such a writing could be changed, as to a material condition by a subsequent *oral* agreement "so as to make the original written contract as modified an enforceable obligation." *Nason,* 67 So.2d at 507. In answering this question in the negative, the *Nason* court first conceded that

> it is generally recognized that the rule that a written contract cannot be changed or modified by parol evidence of what was said and done by the parties at the time of the making of the contract does not preclude the subsequent parol

modification of the written contract, provided the contract *is not one which under the statute is required to be in writing.* Nason, 67 So.2d at 508 (emphasis added). Thus, the court was careful to distinguish between the situation wherein the contract is required to be in writing under the statute of frauds from the situation wherein no such requirement is applicable. In explanation of this vital difference, the court noted that

> [t]he broad general doctrine as announced by most authorities is that a contract required by the statute of frauds to be in writing cannot be validly changed or modified as to any material condition therein by subsequent oral agreement so as to make the original written agreement as modified by the oral one an enforceable obligation. . . . *The contract can be modified only in the manner in which the contract could be legally made enforceable in the first instance.*

Nason, 67 So.2d at 508 (emphasis added). To hold that such a written contract was susceptible to oral modification would "do violence to the purposes of the statute of frauds and make difficult of attainment its salutary efficacy." *Nason,* 67 So.2d at 509. With this conclusion, this court heartily concurs.

This court also draws support from an opinion rendered by a Florida court in *Mathews v. Kingsley,* 100 So.2d 445 (Fla.2d D.C.A.1958). Once again, an option contract relating to the sale of land was involved, thereby rendering the statute of frauds applicable. The court noted that neither party had indicated that an acceptance of the option contract at issue had occurred prior to the expiration date stated within that contract. Instead, the negotiations demonstrated that the optionee was attempting "to supersede the original option by a new option extending the time." *Mathews,* 100 So.2d at 449.

The *Mathews* court found that neither party was contending that a valid option extension agreement had been consummated. Rather, the court found that the optionee had concluded that an agreement had been entered orally and that this, without more, would be sufficient. The court had no choice but to declare that the optionee "admittedly failed to exercise his option to buy as required by the contract." *Mathews,* 100 So.2d at 450.[1]

▋ In sum, under Florida Statute § 672.2–202, terms of a written confirmatory memorandum intended as a final expression of the agreement at issue cannot be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement unless such evidence is supplied by usage of trade or by consistent additional terms. Plaintiff here seeks to alter a vital term of the option contract—the time within which acceptance is deemed to be effective. The option contract was, as the *Athe* court explained, the only written contract involved herein. Its alteration would be unacceptable under the parol evidence rule. Further, if, as plaintiff claims, the option contract only possessed the status of an offer at the time the oral modification occurred, then the acceptance tendered by plaintiff after the initial time limit expired was an acceptance of a different contract—a contract which was not in writing and therefore not acceptable, given the statute of frauds. Thus, plaintiff meets an insuperable obstacle in the pursuit of either of its theories.

▋ It should be noted, in passing, that plaintiff cannot succeed with its further contention that the contract at issue was removed from the strictures of the statute of frauds on the basis of the doctrine of part performance. Such part performance occurred, according to plaintiff, when defendant sent the sight draft in question to the plaintiff's bank. Plaintiff asserts that

---

1. The *Mathews* court also concluded that the facts there failed to show proper grounds for the application of the doctrine of estoppel—a doctrine which could alter the impact of the parol evidence rule in a situation wherein a purchaser has been defrauded or equity clearly favored a different resolution. This court notes that in the case *sub judice,* plaintiff does not seek to invoke this doctrine nor do the facts, as alleged, support such an invocation.

upon receipt of that sight draft, the receiving bank—that is, its bank—had one business day within which to reject same or else the draft would be deemed to be accepted.

Plaintiff's argument misconceives the nature of a sight draft. A sight draft is forwarded in commercial transactions in order to insure that payment will occur upon or prior to the delivery of goods. *See,* White & Summers, *Uniform Commercial Code,* § 18–1. A sight draft is a document written by the *seller* to be paid to the order of the seller with the buyer as the drawee. It is not, therefore, an ordinary draft which is drawn by the drawee and tendered by the same.

In support of its theory, plaintiff cites *Exchange National Bank in Winter Haven v. Sheffield,* 166 So.2d 807 (Fla.2d D.C.A. 1964). However, this case involved the typical check or draft and not the sight draft which is involved herein. In *Sheffield,* the bank at which the drawee was a depositor took possession of the check he had issued after the party who had received the check had deposited it in his own bank and his bank had forwarded it to the drawee's bank, unlike the case *sub judice.*

That plaintiff itself recognized this distinction is suggested by the fact that on April 18, 1977—several days *after* acceptance would have occurred under the plaintiff's theory—the plaintiff authorized its bank to pay the sight draft which had been in its possession. Such authorization would have been unnecessary at that time were the check deemed to be accepted by the drawee bank simply by virtue of its having come within that bank's possession for a period in excess of one business day.

Therefore, it is

ORDERED and ADJUDGED that the motion to dismiss for failure to state a cause of action be and the same is hereby granted and the case is thereby dismissed.