379 So.2d 1227 (1980)
Ralph E. WILLIAMSON and Daphine P. Williamson
v.
Cletus B. METZGER, d/b/a Waverly Sand and Gravel Company.
No. 51624.
Supreme Court of Mississippi.
February 20, 1980.
*1228 Graham, Segrest & Johnson, J. Tyson Graham, Columbus, for appellants.
Carter & Davidson, Bearden & Bearden, Dudley H. Carter, W.E. Bearden, Jr., Columbus, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
WALKER, Justice, for the Court:
This is an appeal by Ralph E. Williamson and wife, Daphine P. Williamson (hereinafter referred to as lessors) from a final decree of the Chancery Court of Lowndes County, Mississippi, rendered January 26, 1979, which refused to cancel and terminate a certain mining lease entered into between the lessors and Cletus B. Metzger (hereinafter referred to as lessee).
The lessors and lessee entered into a sand and gravel mining lease on May 6, 1976, and an amended mining lease on May 7, 1976. The lease provided inter alia that: The lessee would provide the lessors his books and records concerning his mining operations. In addition, the lease provided that the lessee would place a weight scale on the property within 30 days from the date that a certain road was built by the lessors. The lease also provided that in the event any default occurred by the lessee, the lessors could give 30 days notice in writing to the lessee demanding correction of the default. In the event the default was not corrected, lessors could then terminate the lease.
It is uncontradicted that after the lease was signed, mining operations were begun by the lessee, and the road referred to in the lease was built by the lessors and completed about the end of May, 1976. Under the lease, the weighing scale was to be used by the lessee in measuring the amount of gravel taken and was to be placed on the property within 30 days following the completion of the road. The lessee admitted in his testimony that the lessors built the road referred to in the lease, but that he, the lessee, did not place the scale on the property.
For two years and one month after the completion of the road, the weighing scale was not placed on the lessors' property by the lessee. However, it is undisputed that the lessors accepted royalty checks from the lessee during the two-year period.
It is further undisputed that the lessee received a letter from lessors on June 5, 1978, demanding that the scale be placed on the property; and, that the lessee received a letter on July 13, 1978, terminating the lease. The testimony was in conflict as to whether the books and records of the lessee were furnished to the lessors. The lessors testified that the books and records were *1229 not furnished, but the lessee testified that he offered to let the lessors see the books and records.
At the hearing, the court allowed the lessee to testify, over objection of the lessors, that the lease had been modified by the lessors orally agreeing not to require the scale to be placed on the property. The lessee further testified that in reliance on the lessors' assurance that no scale was needed, he concentrated all of his operations on the leased property.
The lower court found that the lessee did furnish the lessors accurate records of minerals removed and, by concentrating and locating his mining operation on subject leased land, the lessee had demonstrated his reliance on conversations of the parties that the scale was not so required, and that the lessors acquiesced therein by accepting rentals for two years.
The lower court decreed that the lease was in full force and effect, but required the lessee to place a weighing scale on the leased premises on or before March 15, 1979, and required the lessee to pay royalties to the lessors in accordance with the weight but permitted the lessee to sell sand and gravel to customers by either yards or weight. From this final decree, lessors urge this Court to reverse the decision of the lower court.
The principal contention of the lessors on this appeal is that the court erred in allowing Metzger, the lessee, to testify that the lease had been orally modified.
In support of this contention, appellants rely upon Sharpsburg Farms, Inc. v. Williams, 363 So.2d 1350 (Miss. 1978), where this Court defined the parol evidence rule as follows:
"[T]he rule that the terms of a written contract or conveyance cannot be varied or added to by parol evidence is not merely a rule of evidence, but is one of substantive law, and, in measuring the rights of the parties to a written contract or conveyance, which, on its face, is unambiguous and expresses an agreement complete in all of its essential terms, the writing will control. Jones, Commentaries on Evidence, Vol. 3, par. 434; Wigmore on Evidence, Vol. 4, pars. 2400 and 2425." (363 So.2d at 1355).
While this is a correct statement of the law concerning parol evidence, it is not applicable to the question here presented. The rule that a written contract cannot be changed or modified by parol evidence of what was agreed by the parties at the time of making the contract does not preclude a subsequent parol modification of the written contract, provided it is not one which must be in writing under the statute of frauds. Nor does it preclude an oral agreement to waive or modify a particular provision in a written contract. Commercial Credit Corporation v. Long, 225 Miss. 164, 82 So.2d 847 (1955); Nason v. Morrissey, 218 Miss. 601, 67 So.2d 506 (1953).
In the case of Lee v. Hawks, 68 Miss. 669, 9 So. 828 (1891), it was held that:
The statute of frauds debars one of an action on a contract, in certain cases, unless the contract be in writing; but a parol agreement to annul or waive a particular stipulation in the written contract which has been mutually assented to and fully performed, may be offered in evidence in defense of an action for a breach of the original written contract. An action may not be maintained, in cases within the statute, upon a contract not in writing; but a defense may be made by showing an executed parol agreement waiving or annulling a particular provision of the written contract.
The subject is not free from difficulty, and the discussions by text-writers, and the opinions of courts in reported cases, are full of subtle distinctions and refinements, nor is the current of authority clearly bent in any direction.
The views briefly advanced hereinbefore are supported by some excellent authorities, and are agreeable to reason and justice.
Benjamin in his admirable work on Sales, (page 229), states the rule with his usual clearness: "Parol evidence to prove, not a substituted contract, but the assent *1230 of the defendant to a substituted mode of performance of the original contract, when that performance is completed, is admissible."
See Swain v. Seamens, 9 Wall. 254, [19 L.Ed. 554]; Jackson v. Litch, 62 Pa.St. 451; Long v. Hartwell, 34 N.J.Law, 116; Reed on Statutes of Fraud, § 239. (68 Miss. 671, 672, 9 So. 828).
In the case sub judice, parol evidence was not used to prove a substituted contract, but was used to show the assent of the lessors to a substituted mode of performance of the original lease; that is, that the scale was not required to be placed upon the property within 30 days following completion of the road, because payment would be based on measurement by the yard rather than weight, which mode of payment was accepted for two years and one month.
In Albert Mackie & Co. v. S.S. Dale & Sons, 122 Miss. 430, 84 So. 453 (1920), an action for damages was instituted by the plaintiff company for the alleged breach of a certain contract in writing for the purchase of six carloads of Irish potatoes. To the declaration, defendant interposed a plea which set up a subsequent parol agreement whereby plaintiff agreed to accept and the defendant agreed to deliver only three carloads instead of six. The parol agreement was denied by the plaintiff and the issue of fact was submitted to the jury. There was a verdict and judgment for the defendant. The main point relied upon by the appellant for reversal of the judgment was that the original contract sued upon was covered by the statute of frauds, and modification of the original contract was void if not in writing.
In reply to this contention, this Court held:
There is much authority to the effect that a strict performance of a written contract within the statute of frauds may be waived by a parol understanding or by words and acts inconsistent with an intention to require performance where the other party has been mislead or kept from performing. It has been frequently stated that the statute of frauds may not be used to perpetrate a fraud.
The Court further held:
The simple contention is made that the purchaser agreed to accept one-half of the property contract to be delivered and waive performance as to the other half. It is immaterial whether this action be termed a waiver, modification, or release. The parties acted upon the parol agreement, and, if the testimony on behalf of appellee be true, it would be very inequitable to award damages in this case. (122 Miss. 449, 84 So. 454, 455).
In 30 Am.Jur.2d Evidence § 1063, p. 203, we find the following concerning subsequent parol agreements or modifications:
It has been said that the parol evidence rule is intended to prevent, not to promote, frauds, and it would be a fraud to allow a party to a written agreement to enforce it as written when he has agreed not to do so, where the other, on the faith of the agreement, has acted thereon to his detriment.
The above authorities are applicable to this case. We are dealing here with a parol agreement, asserted by the lessee, and found to exist by the chancellor, to waive or modify a condition in the lease agreement, and which oral modification is asserted by way of defense to an action by lessors for breach of the lease. Under the authority of Lee v. Hawks, supra, and Albert Mackie & Co. v. S.S. Dale & Sons, supra, the trial judge correctly allowed parol evidence by the lessee to show the substituted mode of performance.
Appellants' remaining assignment of error concerns the refusal of the trial court to terminate and cancel the lease between the parties.
In support of this position, the appellants cite several Mississippi cases, which are authority for the proposition that the forfeiture provision of a lease will be upheld where the violation of a covenant is willful and substantial. The cases cited by appellants deal primarily with instances of nonpayment of rent as grounds for forfeiture, *1231 Clark et al. v. Service Auto Company, 143 Miss. 602, 108 So. 704 (1926); or, forfeiture for violation of a covenant against subletting without written consent or waiver, Robertson v. Fuller, 212 Miss. 888, 56 So.2d 74 (1952) and Polk v. Gibson Products Co. of Hattiesburg, Inc., 257 So.2d 225 (Miss. 1972).
While the above authorities clearly give a lessor the authority to terminate a lease, this argument must fail because there was a waiver of forfeiture by the lessors by their acceptance of royalties for a period of two years and one month according to their oral agreement.
Without a great amount of elaboration, we are of the opinion that the case of Scruggs et al. v. Clark et al., 213 Miss. 290, 56 So.2d 805 (1952), is dispositive of appellants' argument.
In that case, the lessor filed a bill to cancel a sand and gravel lease. The lease contract contained a provision that if the lessee should cease operations for a period of 30 days in succession, the contract would, at the end of said 30-day period, be at an end; and all rights of the lessee would simultaneously cease, unless the lessor, before the expiration of the said 30-day period gave their written consent to the lessee for such cessation of operations. The lessor alleged that this condition had been violated and the lease forfeited. Decree was entered cancelling the lease and the lessee appealed. In reversing the decree of the lower court, this Court stated:
When a lessor accepts regular monthly royalties from the lessee with full knowledge of the nature and extent of the operations by the lessee, he is estopped to claim a forfeiture. He thereby assents to the view that there has been no forfeiture and that the nature and extent of the operations of which he might otherwise complain are not in accordance with the lease. Koenig v. Calcote, 199 Miss. 435, 25 So.(2d) 763. See also 2 Summers, Oil & Gas (Perm.Ed.) Sec. 488.
In Koenig v. Calcote, cited above, this Court quoted with approval from 12 C.J.S. Cancellation of Instruments § 38, p. 996, that:
... where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.
In 58 C.J.S. Mines and Minerals § 184, p. 396 (1948), it is stated:
A forfeiture of a mining lease for failure of the lessee to perform the stipulations, covenants, or conditions as to working the mine may be waived by the lessor, and such waiver may be shown by the acts or conduct of the lessor, such as by his subsequent assent to an assignment of the lease, or by permitting a continuance of the prosecution of the enterprise and the expending of money therein by the lessee, after knowledge of the breach of a condition on which the lease might have been forfeited, or by receiving rent after knowledge of the acts on which a forfeiture is claimed.
We think there can be no question, but that the lessors waived the covenant in the lease. The lease provided that the lessee would place the weighing scale on the property within 30 days from the date that a certain road was built by the lessors. The road was completed near the end of May, 1976, and the weighing scale was not placed on the property. However, receipt of the royalties for a period of two years and one month after the breach was accepted by the lessors in the amount of over $90,000.00. By the receipt of those payments, without complaint, the lessors clearly and definitely recognized the existence of a lease.
We are of the opinion that the chancellor correctly found that the appellants waived any breach of the lease which the lessee may have committed, and were estopped to assert a forfeiture of the lease.
The judgment of the lower court is affirmed.
AFFIRMED.
*1232 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.