# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00205-SCT

*FARM SERVICES, INC.*

*v.*

*OKTIBBEHA COUNTY BOARD OF SUPERVISORS*


| | |
|---|---|
| DATE OF JUDGMENT: | 9/6/2001 |
| TRIAL JUDGE: | HON. JAMES S. GORE |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DEWITT T. HICKS, JR. |
| | P. NELSON SMITH, JR. |
| ATTORNEY FOR APPELLEE: | JACKSON M. BROWN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE PITTMAN, C.J., WALLER AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from a judgment of the Oktibbeha County Chancery Court terminating the lease between Farm Services, Inc. (Farm Services) and the Oktibbeha County Board of Supervisors (Board) for failure to sustain operation for more than one year and/or failure to provide employment to residents. Feeling aggrieved, Farm Services appeals and raises four issues: (1) whether the trial court erred in forfeiting the lease contract; (2) whether the trial court erred in finding that the notice terminating the lease was adequate; (3) whether the court erred in finding that Farm Services was not entitled to $5,750 in credit

for overpayment on the lease contract; and (4) whether the court erred in finding that Farm Services' constitutional rights had not been violated.

## FACTS AND PROCEEDINGS BELOW

¶2. On April 4, 1966, Oktibbeha County (County) leased 10 acres of industrial park in Starkville, Mississippi, to Riverside Oil Mill (Riverside Mill). Later on August 26, 1966, the County entered into an expanded lease contract to provide funds to aid in promoting industry, trade and the use of in state agricultural products and to reduce unemployment by the issuance of industrial revenue bonds. The County issued bonds in the amount of $250,000. With the $ 250,000 in bond money, the County erected a building and made other improvements. The bonds have now been retired.

¶3. On March 29, 1973, Riverside Mill, with County approval, sublet the lease to Cook Industries which then sublet the lease to Farm Services with County approval. The lease was assigned to Farm Services on May 26, 1978, and Farm Services assumed all liabilities, responsibilities and privileges of the original lessor, Riverside Oil Mill or known as Riverside Chemical Company at the time of the assignment. Farm Services is owned by two brothers, Sam and John McReynolds. Farms Services closed its business operations on August 29, 1997. Later, Farm Services demolished buildings and other improvements that were made with bond money. On December 27, 1999, the Board voted to terminate the lease for default because Farm Services had failed to operate a business on the site for more than a year, failed to employ residents of the county, and failed to pay rent. On the same day, Sandra Strickland, Comptroller for the County, received three delinquent checks from Farm Services. The attorney for the Board mailed Farm Services a certified letter informing Farm Services of the Board's termination of the lease on December 28, 1999. However, the letter was returned as undeliverable. Also on December 28, 1999, the Board's

attorney orally notified John McReynolds, President of Farm Services, of the Board's decision to terminate the lease.

¶4.     The Board sued Farm Services in the Oktibbeha County Chancery Court for specific performance and declaratory judgment on March 21, 2000, seeking to terminate its lease with Farm Services for failure to operate for more than one year and for failure to employ residents. The Board also prayed for four years of taxes on building improvements which had been dismantled without County approval and damages caused by dismantling of the structure owned by the County. Farm Services removed the case to U.S. District Court on April 11, 2000, alleging violations of its Fifth and Fourteenth Amendment rights. The U.S. District Court remanded the case to the chancery court, which found:

> [T]he county acted in good faith when its attorney attempted to mail a notice of termination to Farm Services at the address to which it had sent previous notices which were not returned and the County should not be penalized for Farm Services failure to leave a forwarding address or to provide the County with its new address. Additionally, Farm Services had actual notice of the County's actions no later than January 17, 2000. Further, Farm Services received written notice when it was served with process on March 31, 2000. The Court finds that Farm Services was not prejudiced because it failed to receive written notice of the termination by registered mail, and its due process rights were not violated.

## DISCUSSION
*Forfeiture of Lease*

¶5.     Farm Services argues that the trial court's decision to forfeit the lease on the basis that Farm Services dismantled a building was erroneous. Farm Services concedes that it did dismantle an antiquated building, unusable silos, and disposed of rusted farm equipment. Farm Services advised that fertilizer residue caused the buildings to be in danger of explosion. Farm Services also contends that the court disregarded provisions of the lease that gave it the right to alter the nature of the fertilizer and feed business and to remove any machinery or equipment that was obsolete or uneconomical to maintain. Farm Services

3

suggests that members of the Board and the Board's attorney were aware of the dismantling of the buildings. Farm Services also claims that one supervisor participated in helping to remove dismantled portions of the building. Farm Services advances that it was error for the court to state that although the County had notice of the dismantling, waiver did not apply to the Board.

¶6. The construction of a contract is a question of law to be reviewed de novo. *Gulfside Casino P'ship v. Miss. State Port Auth. at Gulfport*, 757 So.2d 250, 257 (Miss. 2000). A contractual clause should be objectively construed. *See id.* "[T]he first rule of contract interpretation is to give effect to the intent of the parties," however, the words utilized are "the best resources for ascertaining intent and assigning meaning with fairness and accuracy." *Simmons v. Bank of Miss.* 593 So.2d 40, 42 (Miss. 1992). "[M]ere disagreement about the meaning of a contract clause does not make it ambiguous as a matter of law." *Gulfside Casino P'ship*, 757 So.2d at 257 (quoting *Simmons* , 593 So.2d at 42-43).

¶7. Farm Services' assertion that the trial judge forfeited the lease because Farm Services dismantled buildings on the property is partly correct. The court did find that "Farm Services breached provisions of the lease by dismantling structures and improvements built with County bond money," however, this finding was ancillary. The judgment clearly states that the trial judge declared that (1) "the lease is terminated and canceled for Farm Service, Inc.'s default due to its failure to be in operation for more than one year and/or failure to provide employment to residents and to decree immediately possession of the property to the County"; and (2) "that the lease is terminated for failure of lessee to rectify breaches within 60 days of the Board's order on December 12, 1999, or the attempted registered notice to Farm Services on December 28, 1999 or within 60 days of filing of this action." Furthermore, the Board stated in its "Order to Terminate

the Farm Services Lease" that "the lease has been broken by Farm Services, Inc. for failure to be in operation for more than one year as well as having failed to pay the annual rental for several years. . . ."

¶8.     The lease  provides in pertinent part:

> 3.   Employment: . . .Mill will exercise due diligence to maintain and operate a manufacturing, processing, warehousing, or other similar type industry in said building expansion project, and to provide steady employment in such operations provided that this agreement is predicated on the continued peaceful operation of the building enterprise of the premises described in this contract and the continued peaceful relationship by and between County, the Mill and all Mill employees.  County and the Mill expressly agree and understand that Mill shall not be required to do any of the above things during any period of time or times when any of the above things are interrupted or when Mill may reasonably anticipate that any of the above things will be interrupted by or as a result of disputes, activities of any person or persons (whether employed by Mill or not), events or circumstances beyond the control of Mill or its management; it is further agreed and understood that Mill shall not be held responsible for factors beyond its control not for interruptions to employment caused by civic commotion, riot, labor disputes and acts of government. It is further agreed that Mill shall not be deemed guilty or chargeable with any breach of covenant or agreement contained in this paragraph unless and until Mill has failed for a continuous period of one year to comply with the provisions hereof, and that in the event of such failure, County may cancel this lease.

¶9.     Farm Services agreed  in its lease assignment from Riverside Chemical Company, assignor, dated May 26, 1978,  "to assume all of Assignor's title to and interest in the Lease including all rights, privileges and obligations arising thereunder. . . ."  In doing so, Farm Services also agreed to the "Employment" provision.  The record reveals that Farm Services ceased its operations and has not employed residents since August 29, 1997. John McReynolds explained that operations ceased because of the embargoes on Russia due to conflicts in Afghanistan.  He noted that the Russians lost faith in the United States and began to buy soybeans from other sources and this caused the feed business to go under.

¶10.    The evidence offered that the cessation of operation was beyond Farm Services' control was not sufficient to shelter Farm Services  under the exception that it is not to be held responsible for factors

5

beyond its control nor for interruptions to employment caused by civic commotion, riot, labor disputes and acts of government. Farm Services did breach the lease by failing to operate its business for more than a year and by failing to provide employment to residents. Hence, we find that the trial court committed no error in forfeiting the lease.

*Sufficiency of Notice*

¶11.	Farm Services argues that the lease was terminated by the County on December 27, 1999, in direct violation of the lease provision giving Farm Services a right of notice of intent to terminate the lease with 60 days right to cure. Furthermore, Farm Services argues that it never received the notice. Farm Services claims that the notice was sent to a defunct post office box, although the County knew how to notify Sam and John McReynolds. For this reason, Farm Services argues that it was error for the trial court to rule that Farm Services received notice.

¶12.	Also, as pointed out by Farm Services, the notice was an actual notice not a notice of intent to terminate, thus the notice was defective and not in compliance with the lease provisions. Farm Services suggests that the County accepted three years' delinquent rental payments on the same day the lease was terminated and that, therefore, any breach for nonpayment was cured. Not only that, but Farm Services alleges that it paid all personal property taxes for 1997, so the County could not argue that there was a breach for lack of payment on the day the lease was terminated. Farm Services also maintains that it cannot be held responsible for the cessation of operations of a business for interruptions caused by civic commotion, riot, strike, labor disputes, and acts of government.

¶13.	Provision 12 D of the lease states:

> [I]f Mill shall fail to perform any of its other obligations or agreements hereunder or under any lease executed pursuant hereto, or if Mill or any assignees or subtenant . . . County shall have the right at its option to terminate this lease . . . however, that before terminating this contract, County shall give notice by registered mail addressed to the Mill at its office in the City of Marks, Mississippi, and Mill shall have sixty (60) days after receipt thereof to cure such default

¶14. The Board's attorney sent notice by certified mail to Farm Services on December 28, 1999, notifying its officers of the Board's actions to terminate the lease. The letter was addressed to Farm Services at P.O. Box 923, Starkville, Mississippi. The letter was returned by the post office as undeliverable. The Board attorney orally notified John McReynolds of the Board's action to terminate the lease on December 28, 1999. Furthermore, Monica Banks, Oktibbeha County Chancery Clerk and Clerk for the Board, testified that she also informed John McReynolds of the Board's actions to terminate the lease on December 28, 1999.

¶15. The address for Farm Services that was returned was the one on record as the business address. There is no evidence that the County was given another address to send the letter informing Farm Services of its intent to terminate the lease. We find that the Board acted in good faith when it attempted to send written notification to the address for which other notices had been sent and not returned.

¶16. Moreover, Farm Services certainly had written notice when it was served with the Bill for Specific Performance and Request for Declaratory Judgment filed March 21, 1999. The record reveals that the McReynoldses were served with process on or about March 31, 1999. From that date, the lease allowed for sixty days to cure any breach. No evidence has been presented by Farm Services that it constructed a new building in the place of the one that was dismantled. Therefore, we find that Farm Services received sufficient notice and failed to cure the breach. For these reasons, the trial court did not err in finding that Farm Services received sufficient notice.

*Entitlement to Lease Payments*

¶17.    Farm Services argues that the lease sets the rent at $1,000 per month, while it was paying $1,250 per month.  Farm Services argues that there was no agreement oral or otherwise modifying this contract; therefore, Farm Services suggests that it is entitled to a credit of $5,750.

¶18.    The trial court found:

> There is no proof before the Court of any written agreement between the County and Farm Services whereby annual rental was increased from $1,000 to $1,250.  The County sent annual statements to Farm Services for "lease payment" due of $1,250.  For whatever reason, Farm Services voiced no complaint and paid said amount.  This Court finds that there has been no overpayment.

The statute of frauds requires that a contract be in writing.  ***Perkins v. Blackledge***, 285 So.2d 761, 763 (Miss. 1973).  "The contract  can only validly be changed or modified as to any material condition when the parties agree to a subsequent parol agreement which then would render the original written contract as modified an enforceable obligation." ***Id.*** (citing ***Nason v. Morrissey***,  218 Miss. 601, 67 So.2d 506 (1953)).

¶19.    The actions of the County must be viewed as a written modification to the original contract, and the actions of Farm Services must be viewed as an acceptance of the modification. The County sent an annual statement to Farm Services for lease payment due of $1,250. modifying the originally agreed upon amount of $1,000. Farm Services accepted this modification by paying the increased amount, without objection, for over twenty-three years.

¶20.    The case law concerning the governing of contracts is well-established.  In ***Singing River Mall Co. v. Mark Fields, Inc.***, 599 So.2d 938, 946-47 (Miss. 1992), this Court held:

> In a contract which purports to be complete, prior or contemporaneous negotiations are merged into the completed contract. ***Continental Gin Co. v. Freeman***, 237 F.Supp.

240, 244-45 (N.D. Miss. 1964), *aff'd*, ***Freeman v. Continental Gin Co.***, 381 F.2d 459 (5th Cir. 1967).

* * * *

For a subsequent agreement to modify an existing contract, the later agreement must, itself, meet the requirements for a valid contract. ***Petition of M/V Elaine Jones***, 480 F.2d 11, 24-25 (citing 3 Corbin, Contracts § 574 at 371 n. 12 (1960)), *amended on other grounds,* ***Canal Barge Co., Inc. v. Griffith,*** 513 F.2d 911 (5th Cir. 1975), *cert. denied,* ***Griffith v. Canal Barge Co., Inc.***, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 and ***Canal Barge Co., Inc. v. Griffith***, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975); ***McGee v. Clark***, 343 So.2d 486, 489, *supplemented by* 346 So.2d 914 (1977). Since a contract modification must have the same essentials as a contract, a binding post-contract agreement must fulfill the requirements of a contract regardless of whether a party characterizes it as a modification or a stand-alone contract.

In ***Kelso v. McGowan***, 604 So.2d 726, 731 (Miss. 1992), this Court stated:

Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties. . . .The existence and the terms of this modifying or discharging agreement can be proved by the same kinds of evidence that are admissible to prove any other kind of contract....But after these issues have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement.3 A. Corbin, Contracts § 574 at 373-75 (1960).

¶21.    In the case sub judice, the facts clearly show actions by both parties modified the preexisting agreement. Therefore, the original contract which listed the lease payment as $1,000 is of no moment to this Court. We must now be only concerned with the new terms of the new contract which set the lease payments at $1,250.

¶22.    Because Farm Services and the County Board of Supervisors modified their preexisting contract to increase the amount of the lease payments, we find the chancellor did not err in determining Farm Services was not entitled to any reimbursements.

*Violations of Constitutional Rights*

9

¶23. Farm Services argues that the County violated its constitutional rights in three ways: (1) by failing to give it due process before depriving it of a property right; (2) by violating its right by treating it differently that similarly situated lessees; and (3) by violating the Takings Clause by attempting to take its property interest without paying just compensation. Additionally, its contends that the County has overlooked nonpayment of rent by other lessees.

¶24. Farm Services failed to cite to any case law in support of its argument. Failure to cite case law in support of an argument precludes this Court from considering the assignment of error on appeal. *Hewlett v. State*, 607 So.2d 1097, 1107 (Miss. 1992).

## CONCLUSION

¶25. For there reasons, we affirm the trial court's judgment.

¶26. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**