# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CT-01190-SCT

*IN THE MATTER OF THE ESTATE OF MILTON TEMPLE, DECEASED: EVELYN TEMPLE ADDINGTON*

*v.*

*ESTATE OF MILTON TEMPLE, DECEASED AND EDWIN MARSHALL TEMPLE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 5/18/1998 |
| TRIAL JUDGE: | HON. TIMOTHY E. ERVIN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL B. GRATZ, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES HUGH RAY |
| | THOMAS WICKER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED - 3/22/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/2001 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. The ownership of a certificate of deposit is the subject of this appeal. Milton Temple, the original owner of the certificate, attempted to make his sister, Evelyn Temple Addington, joint owner with right of survivorship. After Temple's death Addington and Temple's estate differed as to whether Temple had accomplished this objective. The Lee County Chancery Court found that the certificate was an asset of the estate. Addington appealed to this Court, which assigned the case to the Court of Appeals. The Court of Appeals reversed and remanded for further proceedings. This Court granted certiorari to consider the question of ownership of the certificate. After consideration of the testimony and exhibits, we find that the judgment of the Court of Appeals should be reversed and the judgment of the Lee County Chancery Court reinstated and affirmed.

I.

¶2. Milton Temple served for many years as an officer for the Bank of Mississippi in Tupelo. Temple and his wife, Clara, owned two certificates of deposit issued by the Bank of Mississippi in joint tenancy with rights of survivorship. One certificate was in the amount of $90,000 and the second was for $50,000. The dispute here is over the ownership of the $50,000 certificate.

¶3. Clara Temple died in January 1992. The $50,000 certificate matured shortly after Mrs. Temple's death. The bank then automatically renewed it in the names of both Milton and Clara Temple.

¶4. The next month Milton Temple returned the $90,000 certificate to the bank and requested that the bank

re-issue it in the names "Milton Temple or Evelyn Addington," the latter being Milton Temple's sister. After Temple and Addington completed the necessary forms, the bank re-issued the certificate as Temple had requested. The ownership of the $90,000 certificate is not at issue in this appeal.

¶5. It is alleged that in February 1992, Milton Temple requested that the bank re-issue the $50,000 certificate to himself and his sister. Temple completed some paperwork with the bank, but the original certificate was never returned to the bank. The bank never issued a new certificate. Temple died on September 6, 1996. Neither Milton Temple's Estate nor Addington was able to produce the original $50,000 certificate. A copy of the original was provided by the bank.

¶6. The Bank of Mississippi filed a Motion for Interpleader so that ownership of the certificate could be determined. Evelyn Addington argued that the signature card, computer maintenance records from the bank and testimony from Bank of Mississippi Customer Service Representative/Investments Specialist Jane McCaskill and Addington's daughter, Arweeda Miller, showed that ownership of the certificate had been changed to both Milton Temple and Evelyn Addington. The chancellor disagreed and found that the $50,000 certificate of deposit was an asset of Milton Temple's estate.

¶7. Evelyn Addington appealed from this judgment. The Court of Appeals, in a 5-4 decision, found that "[t] here is evidence that changes to ownership of certificates of deposit are accomplished at this bank in the manner followed by Mr. Temple prior to his death. Accordingly, we reverse and remand for the chancellor to determine whether the attempted change to ownership complied with the bank's rules." *In re Estate of Temple*, No. 1998-CA-1190-COA (Miss. Ct. App. March 28, 2000). The dissent found that there was no ambiguity on the face of the $50,000 certificate of deposit, and the chancellor did not err in finding that the actions taken by Temple and the bank were inadequate to show a change in ownership.

II.

¶8. Addington's primary witness was Jane McCaskill. McCaskill testified that the $50,000 certificate of deposit had not been cashed in nor had the original been produced, and it was presumed lost; that Temple attempted to change the survivorship clause of the $50,000 certificate to substitute his sister for his late wife after his wife's death in January 1992; that Temple told McCaskill in January or February of 1992 that he wanted his sister on the certificate but did not want to change the maturity; that in response Temple and Addington executed a signature card, or bank maintenance form, on February 24, 1992, showing this change of survivorship; and that subsequent notices of maturity, interest payment and renewal showed Temple and Addington as the owners of the certificate. McCaskill stated that if Addington had come to her after Temple's death and requested the proceeds of the $50,000 certificate McCaskill would have "had [Addington] sign an affidavit that the CD was lost, and disbursed the money. Because that's what the official records reflected." McCaskill testified that there was no requirement that a new certificate issue to show the change in the survivorship clause.

¶9. Arweeda Miller, daughter of Addington and niece of Temple, testified that after the death of Milton's wife, Clara, Milton told her more than once that his main concern was to see Evelyn Addington taken care of. He also told Miller that he had provided for her mother with some certificates of deposit from the Bank of Mississippi but he never told Miller the amount. Miller, along with Edwin Marshall Temple, had been given power of attorney by Milton Temple, and as a result Miller had monitored Milton's mail and had seen the certificate of deposit notices sent out by Bank of Mississippi. She had also found a Bank of Mississippi envelope at Milton Temple's house with the following notation written on it: "Sister or me - $50,000 Evelyn

Addington no. 95198006." Miller testified that she was familiar with her uncle's handwriting and that he referred to Miller's mother, his only sister, as "Sister."

¶10. There is little statutory authority or case law on what a certificate of deposit must contain, or what must be done to change its terms. Miss. Code Ann. § 75-3-104(j) (Supp. 2000) states: "'Certificate of deposit' means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank."

¶11. The Estate of Milton Temple states generally that the decision of the Court of Appeals is in conflict with *Taylor v. C.I.T. Corp.*, 187 Miss. 581, 191 So. 60 (1939), and *Welch v. Gant*, 161 Miss. 867, 138 So. 585 (1932), but never explains how these cases apply to this case. Neither *Taylor* nor *Welch* deals with banking or certificates of deposit. Both cases deal with the parol evidence rule, so we assume that the Estate is arguing that the testimonies of Jane McCaskill and Arweeda Miller are inadmissible, at least as to non-documentary evidence introduced.

¶12. The Court of Appeals found that "rather than an assignment, what occurred here is more properly labeled a revision of the contract between Temple and the bank. Regardless of other labels, the agreement was at all times a contract subject to properly executed revisions by the parties." *Estate of Temple*, at ¶ 23. The Court of Appeals further found that the original $50,000 certificate represented an agreement between Milton Temple and the bank, and then "[s]ubsequent to 1991, another agreement was entered that altered the terms." *Estate of Temple*, at ¶ 26. The Court of Appeals, in finding that parol evidence was admissible to show the terms of this second agreement, cited *Central Shoe Co. v. J.P. Conn & Co.*, 160 Miss. 151, 155-56, 133 So. 126, 127 (1931), where this Court stated:

> The written memorandum or contract is not required by the statute [of frauds] to be in one writing; it may be in several different writings necessarily connected with each other. If a paper signed by the party sought to be charged makes such reference to another writing as that, construing them together, all the terms of the bargain are expressed, it is sufficient under the statute, and parol evidence is admissible to identify the paper referred to and apply the reference.

*See also* *Williamson v. Metzger*, 379 So.2d 1227, 1229 (Miss. 1980)(parol evidence rule does not preclude evidence of attempted subsequent modification of contract).

¶13. The chancellor's opinion in this case stated that "the funds represented by Certificate No. 120746 (now No. 95298006) are assets of the estate and there is not sufficient evidence before the Court nor does the law allow the Court to draft a certificate of deposit for Milton Temple, deceased." The chancellor provided no further basis for his decision. The Court of Appeals reversed and remanded "for the chancellor to determine whether the attempted change to ownership complied with the bank's rules." *Estate of Temple*, at ¶28. We find that this was error. Addington had her opportunity to make her case and show, by the Bank of Mississippi's rules if necessary, that the certificate of deposit in question was transferred to her. We will determine here whether Addington met her burden.

¶14. Exhibit 3 was identified as a certificate of deposits customer application and signature card. Jane McCaskill testified that when she met with Milton Temple in February 1992 "[w]e executed the signature card, which constitutes a bank maintenance form, also. He signed it and Miss Addington signed it, using that customer record." Exhibit 3 contains Milton Temple's and Evelyn Addington's names printed out but not

their signatures. Exhibit 8 contained the signatures of Milton Temple and Evelyn Addington, and was identified by Jane McCaskill as a signature card that applied to the $50,000 certificate of deposit at issue. The Estate of Temple introduced the following written banking procedure: "Legal Title changes to CD's are not normally handled until the CD matures. If a legal title change is required and is approved by an officer, the request must be entered on a maintenance form and must be signed by the customer." This procedure was apparently dated 1997; McCaskill's testimony was confusing as to whether this was the applicable procedure in 1991-92. She stated that "we failed to find a copy of that for procedures." She stated that the "forms have all changed. We no longer use this signature card." McCaskill, who was not a bank officer, testified that Mr. Long, presumably an officer at the Bank of Mississippi, "has given me the authority to do these, what I need to do." She was not sure if the approval by an officer requirement was the same as it had been in 1992, but stated "I have had prior approval, from an officer, to do what I needed to do." Finally, as to changes made to the legal title of the certificate of deposit on a date other than the renewal date, McCaskill stated: "It's not generally done. It would have been better had it been redone, but then again, when a customer requests that, a bereaved customer as Mr. Temple was, you do tend to make exceptions."

¶15. The findings of a chancellor will not be disturbed when supported by substantial evidence unless there was manifest error or a improper legal standard was applied. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So.2d 200, 204 (Miss. 1998). We find, as did the dissent of the Court of Appeals, that the evidentiary foundation provided by one bank document related to the $50,000 certificate but not containing the signatures of Milton Temple or Evelyn Addington, another bank document containing those signatures but showing no relation on its face to the certificate at issue and internal procedures that may or may not have been followed, is insufficient.

III.

¶16. The judgment of the Court of Appeals is reversed. The judgment of the Lee County Chancery Court is supported by substantial evidence, and is reinstated and affirmed.

¶17. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED; THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

**BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**